**UNITED STATES of America, Plaintiff-Appellant,**

**v.**

**George Jonathan JENSEN, Thomas Stoflet and Ronald Sylva, Defendants-Appellees.**

**No. 20102.**

United States Court of Appeals, Sixth Circuit.

Oct. 5, 1970.

Frederick D. Hess, Dept. of Justice, Washington, D. C., for appellant, James H. Brickley, U. S. Atty., Detroit, Mich., on brief.

William G. Segesta, Detroit, Mich., on brief for appellees.

Before PHILLIPS, Chief Judge, EDWARDS and CELEBREZZE, Circuit Judges.

EDWARDS, Circuit Judge.

This is an appeal by the United States from the grant of appellees' motion to suppress evidence. The United States District Judge who granted the motion held that the affidavit filed by an agent of the Federal Bureau of Narcotics and Dangerous Drugs was insufficient to establish probable cause to believe that a violation of 21 U.S.C. § 331(q) (1) (prohibiting manufacture of hallucinogenic drugs) was being committed. He relied upon the United States Supreme Court decisions in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Another District Judge in the United States District Court for the Eastern District of Michigan had previously issued the warrant, obviously taking a contrary view.

We have carefully reviewed the disputed affidavit (reproduced hereafter as an appendix) and believe that it does set forth facts from which the District Judge who issued it could appropriately have found probable cause.

## THE DRUG SHIPMENTS

We recognize, of course, that this investigation was triggered by information from an unnamed informer (or informers):

"1. On or about February 28, 1969, information was received by the Bureau of Narcotics & Dangerous Drugs at Detroit, Michigan, that Ventron Corporation, Beverly, Massachusetts, had shipped that day 1 pound of Lithium Aluminum Hydride to Thomas Stoflet of the Paint and Color Research Company, 1762 Penobscot Building, Detroit, Michigan, and said Lithium Aluminum Hydride is known to the affiant to be a chemical used in the manufacture of mescaline.

"2. On or about March 3, 1969, information was received by the Bureau of Narcotics & Dangerous Drugs, Detroit, Michigan, that K & K Laboratories, Plainsview, New York, had shipped that day 500 grams of 3, 4, 5, Trimethoxyphenylacetonitrile to Thomas Stoflet, Paint and Color Research Company, 1762 Penobscot Building, Detroit, Michigan, and said 3, 4, 5, is known to the affiant to be a chemical used in the manufacture of mescaline."

But in this case the agents of the Narcotics Bureau did not on receiving this information simply submit the unconfirmed hearsay in affidavits seeking a search warrant. *Cf.* Aguilar v. Texas, *supra.* On the contrary, the affidavit indicates a month of surveillance and investigation. This investigation served to provide detailed confirmation of the two shipments (to the office ultimately searched) of drugs known by the affiant, a Narcotics Bureau Agent, to be used in the manufacture of the drug mescaline.

The affidavit also states that these two drug shipments were delivered to the "Paint & Color Research Co." in the Penobscot Building in Detroit.

The affiant also swore:

"On March 25, 1969, the affiant spoke with Roger Fuelster, chemist for the Bureau of Narcotics & Dangerous Drugs, who stated that 3, 4, 5, and Lithium Aluminum Hydride were of no use in paint and color research."

## THE JENSEN ROLE

The affidavit contains additional hearsay which of and by itself would not sustain a warrant:

"On or about March 17, 1969, the affiant received information from an informant that a man named George who works at Parke Davis Company, which is located at Joseph Campau and the river, was operating a laboratory which was producing hallucigenic (sic.) drugs."

The affidavit also informed the issuing judge that the agents thereupon con-

firmed through investigation at Parke Davis that a George Jensen was employed there as a draftsman, and that investigation established that George Jensen (under the name of Gordon Jensen) had paid the rent on the Penobscot Building office rented by the Paint & Color Research Co. and that the office was being used as a chemical laboratory.

### THE STOFLET ROLE

The affidavit contains still further information:

"On March 25, 1969, the affiant spoke with Mr. James Vanderbrink, personnel manager, Acme Quality Paints, who stated that T. Stoflet was employed from November, 1968, to March, 1969. Stoflet held the position of a lab technician and was assigned the duties of matching paint colors for automotive finishes.

" * * *

"On March 25, 1969, the affiant spoke with Mr. Vanderbrink from Acme Quality Paints who stated that T. Stoflet had been released of his duties at the paint and color research because a female coworker complained of having received a pill from Stoflet which cause (sic) her to have hallucigenic (sic) affects."

The affidavit detailed the investigation and surveillance which confirmed that Stoflet was one of the two men who had rented the Penobscot Building office for the Paint & Color Research Co. and that he had personally received the package of Lithium Aluminum Hydride shipped by the Ventron Corporation.

■ While we recognize, of course, that these facts, if added to others contained in the affidavit, do not add up to proof of guilt beyond a reasonable doubt, they do, in our minds, constitute probable cause for the District Judge who issued the warrant to believe that the crime of manufacturing hallucinogenic drugs was being committed.

■ Hearsay from named persons who supply detailed information suggesting direct knowledge of the facts is admissible for determining probable cause for a search warrant. Spinelli v. United States, 393 U.S. 410, 416, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

■ Hearsay from an unnamed informant may be admissible if there is reason (established in the affidavit) to trust the informant's conclusion either because the facts show that the informant is reliable or because his information is credible in view of its detailed nature (the underlying circumstances). Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

■ Hearsay from an unnamed informant may also be admitted when it can be confirmed by independent investigation. Spinelli v. United States, supra, 393 U.S. at 415, 89 S.Ct. 584; Aguilar v. Texas, supra, 378 U.S. at 109 n. 1, 84 S.Ct. 1509.

In Aguilar the Supreme Court said:

"If the fact and results of such a surveillance had been appropriately presented to the magistrate, this would of course, present an entirely different case." Aguilar v. Texas, supra at 109 n. 1, 84 S.Ct. at 1511.

We believe the basic principles controlling the test of search warrant information are set forth in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and in United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

In Aguilar the Supreme Court said:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United

States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887, was 'credible' or his information 'reliable.'" Aguilar v. Texas, *supra*, 378 U.S. at 114, 84 S.Ct. at 1514. (Footnote omitted.)

In *Ventresca* the Supreme Court said:

"Thus hearsay may be the basis for issuance of the warrant 'so long as there * * * [is] a substantial basis for crediting the hearsay.' Jones v. United States, *supra*, 362 U.S. at 272, [362 U.S. 257, 80 S.Ct., 736. [4 L.Ed. 2d 697]]. And, in *Aguilar* we recognized that 'an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant,' so long as the magistrate is 'informed of some of the underlying circumstances' supporting the affiant's conclusions and his belief that any informant involved "whose identity need not be disclosed * * * was "credible" or his information "reliable." Aguilar v. Texas, *supra*, 378 U.S., at 114, 84 S.Ct., at 1514.

"These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." United States v. Ventresca, *supra*, 380 U.S. at 108, 85 S.Ct. at 746.

Although we recognize the pertinence of much of the detailed analysis of this affidavit made by the District Judge who suppressed the evidence, we believe that "the fact and results of a surveillance" were presented in the affidavit, Aguilar v. Texas, *supra*, 378 U.S. at 109, 84 S.Ct at 1511, and that "the underlying circumstances" recited therein did "supply a substantial basis for crediting the hearsay." Aguilar v. Texas, *supra* at 114, 84 S.Ct. at 1514.

■ Further, we believe it strongly accords with the purposes of the Fourth Amendment for this court to encourage careful police investigation and search warrant application (as exemplified herein). United States v. Ventresca, *supra*; Naples v. Maxwell, 393 F.2d 615 (6th Cir. 1968), cert. denied, 393 U.S. 1080, 89 S.Ct. 850, 21 L.Ed.2d 772 (1969); United States v. Bowling, 351 F.2d 236 (6th Cir. 1965), cert. denied, 383 U.S. 908, 86 S.Ct. 888, 15 L.Ed.2d 663 (1966).

The judgment of the District Court granting the motion to suppress evidence is vacated and the case is remanded for further proceedings consistent with this opinion.

## APPENDIX

United States District Court
for the

Eastern District of Michigan, Southern Division

[Filed March 28, 1969]

---

United States of America

vs.

1762 Penobscot Building, Detroit, Michigan, an office in a multi story office building, having an entrance from a door on the east side of the building in the eastern corridor of the 17th floor, which corridor runs in a north-south direction and which entrance is the second entrance from the northern corridor of the floor, which corridor runs in an east-west direction.

## AFFIDAVIT FOR SEARCH WARRANT

Before      Federal Building, Detroit,

Michigan

The undersigned being duly sworn deposes and says:

That he has reason to believe that on the premises known as 1762 Penobscot Building, Detroit, Michigan, an office in a multi story office building, having an entrance from a door on the east side of the building in the eastern corridor of the 17th floor, which corridor runs in a north-south direction and which entrance is the second entrance from the northern corridor of the floor, which corridor runs in an east-west direction, in the Eastern District of Michigan there is now being concealed certain property, namely, chemicals, chemical glassware and equipment which are being used as the means of committing a criminal offense, to wit: the manufacture, compounding and processing of a drug as prescribed by Section 360a, Title 21, U.S.C., in violation of Section 331(q) (1), Title 21, U.S.C.

And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

1. On or about February 28, 1969, information was received by the Bureau of Narcotics & Dangerous Drugs at Detroit, Michigan, that Ventron Corporation, Beverly, Massachusetts, had shipped that day 1 pound of Lithium Aluminum Hydride to Thomas Stoflet of the Paint and Color Research Company, 1762 Penobscot Building, Detroit, Michigan, and said Lithium Aluminum Hydride is known to the affiant to be a chemical used in the manufacture of mescaline.

2. On or about March 3, 1969, information was received by the Bureau of Narcotics & Dangerous Drugs, Detroit, Michigan, that K & K Laboratories, Plainsview, New York, had shipped that day 500 grams of 3, 4, 5, Trimethoxyphenylacetonitrile to Thomas Stoflet, Paint and Color Research Company, 1762 Penobscot Building Detroit, Michigan, and said 3, 4, 5, is known to the affiant to be a chemical used in the manufacture of mescaline.

3. On March 25, 1969, the affiant talked with Roger Fuelster, chemist for the Bureau of Narcotics & Dangerous Drugs, who stated that Lithium Aluminum Hydride and 3, 4, 5, are chemicals used in the manufacture of mescaline.

4. On March 10, 1969, the affiant spoke with Mr. R. Tucker, a driver for United Parcel Service who makes the deliveries to the Penobscot Building. Mr. Tucker said that on March 7, 1969, he left a package addressed to T. Stoflet, Paint and Color Research Company, 1762 Penobscot Building, Detroit, Michigan, with Mr. Shirley T. Johnson, 1761 Penobscot Building, who gave the package to the cleaning woman for that floor.

5. On March 10, 1969, the affiant talked with Mrs. Veronica Saski, the floor supervisor for the 17th floor of the Penobscot Building. Mrs. Saski stated that she found a package from K & K Laboratories, addressed to T. Stoflet, 1762 Penobscot Building, Detroit, Michigan. Mrs. Saski stated that she later found the package in the waste paper basket and said package has in the interim been emptied of its contents.

6. On February 26, 1969, the affiant and Agent Donald Schnettler of the Bureau of Narcotics & Dangerous Drugs talked with Helene Wais, building manager of the Penobscot Building, Detroit, Michigan, who stated that 1762 Penobscot Building was being rented by 2 men who gave their names as Gordon Jensen and Thomas Stoflet, who were using the name of Paint and Color Research.

7. On or about March 17, 1969, the affiant received information from an informant that a man named George who works at Parke Davis Company, which is located at Joseph Campau and the river, was operating a laboratory which was producing hallucigenic (sic) drugs.

8. On March 19, 1969, the affiant spoke with Mr. V. D. Johnson, Director of personnel of Parke Davis and Com-

pany which is located at Joseph Campau and the river, Detroit, Michigan. Mr. Johnson stated that a Mr. George Jensen, 16155 Trinity, Detroit, was employed as a draftsman. Mr. Johnson gave the affiant a picture of the aforementioned Mr. George Jensen.

9. On March 19, 1969, the affiant spoke with Patricia Robinson, Office Secretary for the Office of the Penobscot Building. Patricia Robinson identified the picture of George Jensen, which had been received from V. D. Johnson, as the man who proported [sic] to be Gordon Jensen and who had paid the rent for 1762 Penobscot Building, Detroit, Michigan.

10. On March 18, 1969, the affiant observed a package from the Ventron Corporation in the possession of an agent of the railway express agency at the entrance of 1762 Penobscot Building. The agent of the Railway Express Agency was attempting to make a delivery. The affiant saw the package and noted that it was addressed to T. Stoflet, Paint and Color Research, 1762 Penobscot Building, Detroit, Michigan. The driver stated that he was unable to make a delivery and that he would return the package to the Railway Express Agency. He left a note for the tenant in which he told him that he would be able to pick the package up at the Railway Express Agency, 2436 Bagley, Detroit, Michigan.

11. On March 19, 1969, at approximately 2:00 P.M. the affiant observed a man who fit the description of T. Stoflet leave the office of the Railway Express Agency, 2436 Bagley, Detroit, carrying a package which resembled the package that the affiant saw at 1762 Penobscot Building, Detroit, on March 18, 1969. The man who fit the description of Thomas Stoflet, entered a 1962 black Volkswagon (sic) bearing 1969 Michigan License No. CV 3348.

12. On March 26, 1969, the affiant received information from the Michigan Secretary of State's Office that the vehicle bearing 1969 Michigan License No. CV 3348 is registered under the name of George Jensen, 16155 Trinity, Detroit, Michigan.

13. On March 19, 1969, the affiant observed the inside of 1762 Penobscot Building, Detroit, from a position in the National Bank of Detroit Building, Detroit, and saw containers bearing the labels of ether, absolute methanol and benzene and tetrahydrofurin. The affiant further observed certain chemicals, glassware inside 1762 Penobscot Building, Detroit.

14. On March 22, 1969, the affiant and Special Agents James Edwards and Edmund Maciejewski of the Bureau of Narcotics & Dangerous Drugs, from a position in the National Bank of Detroit Building, Detroit, observed 2 men inside 1762 Penobscot Building, Detroit. One of the men was the man who has been previously described as the individual who fits the description of Thomas Stoflet. The other man was not in a position which enabled him to be identified.

15. On March 25, 1969, the affiant spoke with Roger Fuelster, chemist for the Bureau of Narcotics & Dangerous Drugs who stated that 3, 4, 5, and Lithium Aluminum Hydride were of no use in paint and color research.

16. On March 25, 1969, the affiant spoke with Mr. James Vanderbrink, personnel manager, Acme Quality Paints, who stated that T. Stoflet was employed from November, 1968, to March, 1969. Stoflet held the position of a lab technician and was assigned the duties of matching paint colors for automotive finishes.

17. On March 25, 1969, the affiant received information from an informant, who had been previously proven reliable, that T. Stoflet had been employed in the laboratories at the Cook Paint and Varnish Company, 3301 Bourke, Detroit, Michigan, from April, 1965, to May, 1966.

18. On March 28, 1969, the affiant spoke with George Derbin, Lab Supervisor, Cook Paint and Varnish Company, 3301 Bourke, Detroit, Michigan. Mr. Derbin stated that complex facilities are

needed to conduct paint and color research. Such research requires a spray booth, a dip tank or certain electric coating equipment. Mr. Derbin further stated that in conducting research of paints one needs to have a means of applying the paint. Mr. Derbin further stated on March 29, 1969, that the Laboratories at Cook Paint and Varnish is used for researching automotive paints.

19. On March 25, 1969, the affiant spoke with Mr. Vanderbrink from Acme Quality Paints who stated that T. Stoflet had been released of his duties at the paint and color research because a female coworker complained of having received a pill from Stoflet which caused her to have hallucigenic (sic) affects.

/s/ Marcelino Bedolla
Signature of Affiant
Agent, U. S. Bureau
of Narcotics & Dangerous Drugs

/s/ Damon J. Keith
United States District Judge

Dated: March 28, 1969