Charles Edward **FRAZIER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 44638.

Court of Criminal Appeals of Texas.

April 19, 1972.

Rehearing Denied June 14, 1972.

---

Melvyn Carson Bruder, Dallas (Court Appointed), for appellant.

Henry Wade, Dist. Atty., John B. Tolle, and Robert Baskett, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of unlawful possession of a narcotic drug, to-wit: marihuana. Punishment was assessed by the court at ten years.

Initially, appellant complains that the trial court improperly overruled his motion to suppress evidence. He argues that the affidavit for the search warrant does not show that probable cause existed for the search.

The affidavit in question reads in part:

"I have been informed of the foregoing setout facts by a person, who I know to be reliable, credible and trustworthy, who states the following facts: At 11:36 A.M., Friday, November 7, 1969, the affiant received a call to 2518 Grand Avenue, room #6 and was informed of the following facts by Mildred Washington

c/f/38: That on Wednesday, November 5, 1969, she went to the OK Super Market at Oakland and Pine Streets. That she became dizzy and asked if someone could take her to her residence. That Charles Frazier stated that he would take her home but instead took her to his residence located at 2543 Pine Street. That Charles Frazier offered her three (3) large white tablets and she refused. That Charles Frazier then offered her three (3) Nembutal capsules and she took them. That she then passed out. That she regained consciousness and Charles Frazier then gave her three (3) more Nembutal capsules. That she observed Charles Frazier go to an upright chest with a mirror. That she again passed out and recalled an unknown colored female come to the location and tell her to remove her clothes and get into bed. That she does not remember anything else until Friday morning, November 7, 1969.

"Mozell Shelton c/f, advised the affiant that she located Mildred Washington at Charles Frazier's residence on Thursday, November 6, 1969 and returned her home. That Mildred Washington was not conscious at the time and did not become rational until early the next day.

"The affiant has checked Charles Frazier's police record and found that he has been handled for violation of the dangerous drug laws in the past and has been convicted for Illegal Possession of a Dangerous Drug. The affiant took a picture of Charles Frazier to the complainant, Mildred Washington and she identified it as the same man that gave her the Nembutal capsules."

A search warrant was issued upon this affidavit. Officer Larry M. Adamson and other officers of the Dallas Police Department executed the warrant at the named address. During the search, a plastic bag of pills, which were identified as pentobarbital, was found in the toe of a shoe located in a closet in the room in which appellant was found. Appellant was placed un-

der arrest and he began to put on his coat. The coat was searched, and a marihuana cigarette was found in the left breast pocket.

■ The search of the coat was within the permissible scope of a search incident to arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Appellant argues that the arrest was unlawful. He contends that the arrest was unlawful because it was the result of an unlawful search and that the search was unlawful because the affidavit for the search warrant failed to furnish information showing that the named person who gave the information concerning appellant's possession of dangerous drugs was credible and reliable.

■ Hearsay may be the basis for a warrant.[1] Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). When hearsay forms the basis of an affidavit for a search warrant, two types of information must be disclosed: (1) information showing that matter which is lawfully subject to seizure is probably where it is alleged to be; and (2) information showing the reliability of the informant. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Stoddard v. State, Tex.Cr.App., 475 S.W.2d 744. Corroborating facts from police observations which are stated in the affidavit can be taken into account to determine whether the affidavit as a whole meets both requirements of Aguilar. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969).

While the standards applicable to determining whether the factual circumstances support an officer's probable cause assessment at the time of the challenged arrest and search are at least as stringent as the standards applied with respect to reviewing the decision of a magistrate,[2] probable cause requirements for warrantless searches have been met where officers *acted immediately upon information* furnished to them by witnesses to a crime without first investigating the reliability and credibility of those witnesses. e.g. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 2d 419 (1970); Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Green v. State, Tex.Cr.App., 470 S.W.2d 901; Johnson v. State, Tex.Cr.App., 466 S.W.2d 735. As the Supreme Court noted in Jones v. United States, supra:

"If an officer may act upon probable cause without a warrant, when the only incriminating evidence in his possession is hearsay, it would be incongruous to hold that such evidence presented in an affidavit is insufficient basis for a warrant. If evidence of a more judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant must be presented when a warrant is sought, warrants could seldom legitimatize police conduct, and resort to them would ultimately be discouraged. Due regard for the safeguards governing arrests and searches counsels the contrary. In a doubtful case, when the officer does not have clearly convincing evidence of the immediate need to search, it is most im-

1. Until the decision by the Supreme Court in Jones, authority existed for the proposition that hearsay information was insufficient to establish probable cause for the issuance of a search warrant. See, e. g., Grau v. United States, 287 U.S. 124, 53 S.Ct. 38, 77 L.Ed. 212 (1932); Merritt v. United States, 249 F.2d 19 (6th Cir. 1957); Davis v. United States, 35 F.2d 957 (5th Cir. 1929); Wagner v. United States, 8 F.2d 581 (8th Cir.

1929). Texas, however, has long held that hearsay allegations in the affidavit were sufficient. e. g., Gaston v. State, Tex.Cr.App., 440 S.W.2d 297, cert. denied, 396 U.S. 969, 90 S.Ct. 452, 24 L.Ed.2d 435; Rozner v. State, 109 Tex.Cr.R. 127, 3 S.W.2d 441.

2. Whiteley v. Warden, Wyoming Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

portant that resort be had to a warrant, so that the evidence in the possession of the police may be weighed by an independent judicial officer, whose decision, not that of the police, may govern whether liberty or privacy is to be invaded."

To uphold appellant's contention in the instant case would lead to anomalous results. On the one hand, an officer could, under the holdings of such cases as *Chambers* and *Hayden*, make a search without a warrant in a situation in which he would not have probable cause to obtain a warrant. Such a result runs exactly contrary to the reasoning in Jones v. United States, supra. See also, Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L. Ed.2d 564 (1971); Fry v. State (No. 44,- 537 2–23–72). On the other hand, if the standards espoused by appellant were applied equally in reviewing probable cause for searches conducted both with and without a warrant, law enforcement officials would be so overburdened with investigating the reliability and credibility of witnesses to crimes that they would have little time to apprehend the criminals.

■ Neither result is required by the Constitution of the United States. In order for an affidavit to show probable cause, it must set forth sufficient circumstances to enable a magistrate to judge, independently, the validity of the affiant's belief that contraband is at the place to be searched. e.g. Nicol v. State, Tex.Cr.App., 470 S.W.2d 893; Heredia v. State, Tex. Cr.App., 468 S.W.2d 833. No magical formula exists for stating such information. As was stated in United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965):

"If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area."

■ The reasons for detailing the basis for an officer's belief in information gained from an undisclosed informant simply do not apply where a private citizen, whose only contact with the police or criminal activity is a result of having witnessed a single criminal act committed by another, furnishes law enforcement officials with information and vouches for such information by allowing the officers to use his name. Recently the United States Court of Appeals for the Fifth Circuit stated in United States v. Bell, 457 F.2d 1231:

"The rationale behind requiring a showing of credibility and reliability is to prevent searches based upon an unknown informant's tip that may not reflect anything more than idle rumor or irresponsible conjecture. Thus, without the establishment of the probability of reliability, a 'neutral and detached magistrate' could not adequately assess the probative value of the tip in exercising his judgment as to the existence of probable cause. Many informants are intimately involved with the persons informed upon and with the illegal conduct at hand, and this circumstance could also affect their credibility. None of these considerations is present in the eyewitness situation such as was present here. Such observers are seldom involved with the miscreants or the crime. Eyewitnesses by definition are not passing along idle rumor, for they either have been the victims of the crime or have otherwise seen some portion of it. A 'neutral and detached magistrate' could adequately assess the probative value of an eyewitness's information because, if it is reasonable and accepted as true, the magistrate must believe that it is based upon firsthand knowledge."

■ We hold that the requirements of Aguilar v. Texas, supra, are met when the hearsay information in an affidavit is derived from named persons who supply detailed information suggesting direct knowledge of the information which they have given. United States v. Bell, supra; United States v. Evans, 447 F.2d 129 (8th Cir. 1971); United States v. Mahler, 442 F.2d 1172 (9th Cir. 1971); United States v. Jensen, 432 F.2d 861 (6th Cir. 1970); Gallagher v. United States, 406 F.2d 102 (8th Cir. 1969), cert. denied, 395 U.S. 968, 89 S.Ct. 2117, 23 L.Ed.2d 756 (1969); United States v. Pascente, 387 F.2d 923 (7th Cir. 1967), cert. denied, 390 U.S. 1005, 88 S.Ct. 1248, 20 L.Ed.2d 105 (1968); United States v. Bozza, 365 F.2d 206 (2d Cir. 1966).

By his second ground of error, appellant contends that his conviction in the instant case was barred by the double jeopardy provision of the Fifth Amendment and by the state doctrine of carving.

The record reflects that appellant plead guilty to a charge of illegal possession of dangerous drugs on February 27, 1970. The dangerous drugs in question were found during the search which culminated in the police finding the marihuana cigarette which appellant has been convicted of possessing in the instant case.

■ Under the carving doctrine, the state may carve as large an offense from a single transaction as it can but may cut only once. e.g. Price v. State, Tex.Cr.App., 475 S.W.2d 742; Douthit v. State, Tex.Cr.App., 482 S.W.2d 155; Duckett v. State, Tex.Cr.App., 454 S.W.2d 755. However, the possession of a dangerous drug is not the same criminal act as the possession of a narcotic drug. Each type of offense is governed by a separate statute, and proof that an accused has violated one of the statutes is insufficient to support a con-

viction under the other. The offense of possession of dangerous drugs being separate and distinct from the offense of possession of a narcotic drug, the doctrines of carving and double jeopardy are inapplicable. See, McMillan v. State, Tex.Cr.App., 468 S.W.2d 444.

■ By his third ground of error, appellant contends that two prior convictions were improperly admitted at the punishment stage of his trial.

The record reflects that, prior to appellant's trial, he moved to suppress the use of his prior convictions by the state. At a pretrial hearing on this motion, he testified that he did not have counsel at the time of his 1959 arson conviction. At the punishment stage of the trial, the 1959 arson conviction and the previously discussed 1970 conviction for unlawful possession of barbiturates were introduced over appellant's objection.

Appellant's testimony does not reveal that he was indigent at the time of these convictions or that he did not waive his right to counsel.[3] Absent these allegations, no error is shown. Ex parte Bird, 449 S.W.2d 41.

By his fourth ground of error, appellant contends that the evidence is insufficient to support the conviction. He argues that the state must prove that appellant owned the coat in which the marihuana was found in order to meet its burden of proving appellant's guilt.

■ When the sufficiency of the evidence to support a conviction under Article 725b, Vernon's Ann.P.C., is challenged, the question to be determined is whether or not there is evidence from which the trier of facts was warranted in finding that the accused knowingly exercised actual care, control, or management over a narcotic drug. e.g. Rodriguez v. State, Tex.Cr.

3. It should be noted that in his verified pleadings in support of his jeopardy contention, appellant swore that he had been "duly and legally convicted" on February 27, 1970, for the offense of unlawful possession of barbiturates. The record shows that this is the same 1970 conviction that he is now claiming is invalid.

**381**

App., 372 S.W.2d 541; Fawcett v. State, 137 Tex.Cr.R. 14, 127 S.W.2d 905.

■ Where, as here, the contraband is found in clothing being worn by the accused, a question of fact as to whether the accused knowingly possessed such contraband is presented for jury determination.[4] e.g. Stuart v. State, Tex.Cr.App., 456 S.W.2d 129; Tomlin v. State, 170 Tex. Cr.R. 108, 338 S.W.2d 735; Sosa v. State, 161 Tex.Cr.R. 193, 275 S.W.2d 655.

■ In the instant case, appellant exercised possession of the coat when he began to put it on. There being no question that he possessed the coat, the jury was warranted in finding that he had actual care, control, or management of the contraband within the coat. Salinas v. State, Tex.Cr. App., 479 S.W.2d 913; Kwant v. State, Tex.Cr.App., 472 S.W.2d 781.

In Salinas v. State, supra, heroin was found inside a package of "Bugler" tobacco which was passed from the accused to a jail guard. In Kwant v. State, supra, the accused held a paper bag which contained marihuana while his companion opened the trunk of an automobile. In each case this court held that the evidence was sufficient since the person accused had been in possession of the thing which contained the contraband.

The evidence is sufficient to support the conviction.

■ By his sixth ground of error, appellant contends that the trial court erred in overruling his objection to prosecutorial argument. During the portion of the argument to which complaint is made, the prosecutor stated that:

"Now, one of the quail trails Mr. Bruder got started on was whether or not the man lived there. Well, as I told you to start with, I don't care whether he did or not. I care whether or not he was in possession of Marijuana. That's all I care about. So, that's neither here nor there. One of the officers did say he believed he was a tenant at that location. I think he's probably right, he probably did live there. He was in that—

"MR. BRUDER: Object, that's bolstering."

Appellant argues that, "When the prosecutor agreed with the officer's 'belief' testimony, he was bolstering the incompetent evidence by testimony which was not sworn to, nor was it a reasonable deduction from the evidence."

The record reflects that appellant was in bed when the officers arrived at 8:50 A.M. on the morning in question. Men's clothing was found in the closet of the room. Under such circumstances, the portion of the argument in question was supported by evidence; and no error is shown. See, e.g. Archer v. State, Tex.Cr.App., 474 S.W.2d 484; O'Dell v. State, 467 S.W.2d 444.

■ Appellant's fifth ground of error consists of a claim that certain evidence was improperly admitted. His seventh ground of error is a complaint that he was improperly limited in his cross-examination of an expert witness. His argument under each ground consists of a conclusory statement that error was committed. He does not elaborate upon these claims and cites no authority. Nothing is presented for our review by grounds of error five and seven because of lack of compliance with the requirements of Article 40.09, Sec. 9, Vernon's Ann.C.C.P.

There being no reversible error, the judgment is affirmed.

4. In the instant case, appellant neither raised the issue of lack of knowledge nor requested a charge on knowledge.