Allen v. Blackwell 


















IN THE
TENTH COURT OF APPEALS
 

No. 10-93-064-CV

     JANICE KAY ALLEN,
                                                                                              Appellant
     v.

     TRAVIS G. BLACKWELL,
                                                                                              Appellee
 

From the 19th District Court
McLennan County, Texas
Trial Court # 82-1618-1
                                                                                                    

O P I N I O N
                                                                                                    

     Janice Allen and Travis Blackwell were divorced on August 18, 1982. Allen was appointed
managing conservator of their two children, Lisa and Rachel. Blackwell was ordered to pay child
support of $200 per month. On April 15, 1986, Blackwell was named managing conservator of
Lisa, and his support obligation was reduced to $100 per month. On April 12, 1988, Blackwell
was also named Rachel's managing conservator and, the parties agree, his support obligation
terminated entirely.
      On May 8, 1991, Allen filed a motion to modify, seeking to be named managing conservator
of Rachel and to have Blackwell pay child support for her. On August 24, 1992, Allen filed a
supplemental motion and sought for the first time to have an arrearage of $16,400 for the years
1982 through 1992 reduced to judgment. The court determined that it lacked jurisdiction to reduce
the unpaid support payments to judgment because more than four years had elapsed since April
15, 1986—the date Blackwell had been named Lisa's managing conservator, thus terminating his
support obligation as to Lisa. Also, more than four years had elapsed since April 12, 1988—the
date he had been named Rachel's managing conservator and his support obligation as to Rachel
terminated.
      Lisa was born on July 11, 1971, and became an adult on July 11, 1989. Rachel was born on
November 15, 1981, and had not attained the age of majority at the time the motion to reduce the
unpaid support to judgment was filed.
      In a single point of error, Allen contends that section 14.41(b) of the Family Code should be
interpreted to allow an obligee of a support obligation four years from either the date on which
the child becomes an adult or the date on which the support obligation terminates. See Tex. Fam.
Code Ann. § 14.41(b) (Vernon Supp. 1993). If we were to accept this interpretation, her motion
would be timely because it was filed within four years after Lisa became an adult and because
Rachel is still under eighteen years of age.
      Section 14.41(b) states:
Time Limitations. The court may not confirm the amount of child support in arrears and may
not enter a judgment for unpaid child support payments that were due and owing more than
10 years before the filing of the motion to render judgment under this section. The court
retains jurisdiction to enter judgment for past-due child support obligations if a motion to
render judgment for the arrearages is filed within four years after
 
(1) the child becomes an adult; or
 
(2) the date on which the child support obligation terminates pursuant to the decree or
order or by operation of law. 
      Section 14.41(b) contains two limitations on the right of a child-support obligee to enforce
payment of past-due child support. Id. It imposes a ten-year limitation on past-due obligations,
dating backward from the date the motion is filed, and it imposes a jurisdictional requirement by
denying the court jurisdiction to entertain such a motion that is not filed within four years of the
applicable date. Id. The section is generally regarded as both (1) assuring that some time period
is allowed after a support order terminates during which the obligee can seek a judgment for
unpaid support and (2) imposing time limits on the obligee's right to compel past-due payments. 
John J. Sampson, Title Two, Parent and Child, 17 Tex. Tech L. Rev. 1065, 1208 (1986); John
J. Sampson, Chapter 14: Conservatorship, Possession, and Support of Children, 21 Tex. Tech
L. Rev. 1323, 1461-62 (1990). 
      Because the general rule is that a support obligation terminates when the child attains the age
of eighteen, we interpret the applicable part of section 14.41(b) to mean:
(b) Time Limitations. . . . The court retains jurisdiction to enter judgment for past-due
child support obligations if a motion to render judgment for the arrearages is filed within four
years after:
(1) the child becomes an adult; or [if for any reason the support order terminates on any
other date,]
(2) the date on which the child support obligation terminates pursuant to the decree or
order or by operation of law.
See Tex. Fam. Code Ann. § 14.41(b).
      We are persuaded that this is the correct interpretation for three reasons. First, this
interpretation allows a "just and reasonable" result. See Tex. Govt. Code Ann. § 311.021(3)
(Vernon 1988). Second, a corresponding section of the Family Code imposing time limits on
enforcement of support obligations by contempt has been so interpreted. Tex. Fam. Code Ann.
§ 14.40(b) (Vernon 1986); Ex parte Walker, 739 S.W.2d 415, 417 (Tex.App.—Amarillo 1987,
no writ). Finally, because the Family Code now allows a court to order child support for disabled
children over the age of eighteen, this interpretation does not shorten the time to file a motion to
reduce unpaid support payments to judgment when those payments were not due until after the
child became an adult. Tex. Fam. Code Ann. § 14.051 (Vernon Supp. 1993).
      Because the court correctly interpreted section 14.41(b) as depriving it of jurisdiction to
reduce the arrearages to judgment, we affirm. See id. § 14.41(b).
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed December 1, 1993
Publish 



le.
      Texas properly draws a distinction between a paid police informant and the average citizen
who provides information to the police because they are a victim or witness to a crime. "The
reasons for detailing the basis for an officer's belief in information gained from an undisclosed
informant simply do not apply where a private citizen, whose only contact with the police or
criminal activity is a result of having witnessed a single criminal act committed by another,
furnishes law enforcement officials with information and vouches for such information by allowing
the officers to use his name." Frazier v. State, 480 S.W.2d 375, 379 (Tex. Crim. App. 1972);
see also Esco v. State, 668 S.W.2d 358 (Tex. Crim. App. [Panel Op.] 1982); Hennessy, 660
S.W.2d at 91. A citizen who tenders his name to the police and gives sufficiently detailed
information carries an indicia of reliability. Wood v. State, 573 S.W.2d 207, 216 n.2 (Tex. Crim.
App. 1978). 
      In the instant case, the affidavit in support of the search warrant was based on information
supplied by a man known to the police but unidentified in the affidavit. Unlike an anonymous tip,
this situation creates fewer doubts with respect to the matter of veracity. See Wayne R. LaFave,
Search & Seizure, section 3.4(a), at 598 (1978). 
      Under the specific facts, we hold that the affidavit supplied the magistrate with sufficient
underlying circumstances to establish the citizen-informant's reliability. We overrule point one.
SUFFICIENCY OF THE EVIDENCE
      In his second point, Satoh argues that there is no evidence to establish the child-victim's age
and thus the evidence is insufficient to support a conviction for aggravated sexual assault. He cites
article 1.15 of the Code of Criminal Procedure for the proposition that, although he pleaded guilty,
the State was required to introduce sufficient evidence of his guilt. See Tex. Code Crim. Proc.
Ann. art. 1.15 (Vernon Supp. 1994). Article 1.15 provides that the evidence may be stipulated
if the defendant "consents in writing, in open court, to waive the appearance, confrontation, and
cross-examination of witnesses" and further consents to an oral stipulation of the evidence or the
introduction of affidavits to support the judgment. The State argues that article 1.15 is
inapplicable to guilty pleas to a jury. See Ex parte Williams, 703 S.W.2d 674, 678 (Tex. Crim.
App. 1986).
      Satoh signed a document entitled "Defendant's Plea of Guilty, Waiver, Stipulation and
Judicial Confession." However, he scratched through the word "waiver" in the caption. He also
marked through several paragraphs regarding waiver of certain rights including the reading of the
indictment, the right to a jury trial, and the right to remain silent, and deleted paragraph six which
states: 
However, I desire to WAIVE and do waive the following rights:
. . .
6. Waive the right to be confronted with the witnesses against me and request the approval
of the Court to the stipulation of the evidence by waiving the appearance, confrontation and
cross-examination of witnesses, and by my further consenting to the introduction of testimony
and evidence by stipulation into the record by the attorney for the State, by oral stipulation,
or by written statements of witnesses and any other documentary evidence.
Below this, however, the document contains the following paragraph that was not deleted:
I do further admit and judicially confess that I unlawfully committed the acts alleged in the
indictment/information in this cause at the time and place and in the manner alleged and that
such allegations are true and correct, and that I am in fact GUILTY of the offense alleged.
      The indictment alleged that Satoh intentionally and knowingly caused the sexual organ of
Josh, a child younger than fourteen years of age, to contact his mouth. Satoh pleaded guilty to
the jury and did "admit and judicially confess" that he committed the act as alleged in the
indictment and was "in fact GUILTY of the offense alleged." In felony cases, a plea of guilty to
the jury admits the existence of all necessary elements to establish guilt. Darden v. State, 430
S.W.2d 494, 495 (Tex. Crim. App. 1968). After Satoh pleaded guilty to the jury, the State then
introduced testimony to enable the jury to intelligently exercise its discretion in assessing
punishment. See Ex parte Williams, 703 S.W.2d at 678. In addition to Satoh's written admission
that he committed the act as alleged in the indictment, the jury had before it the photographs. We
believe the evidence was sufficient to establish the aggravated sexual assault. We overrule point
two.
REBUTTAL WITNESSES
      In his third point, Satoh complains that the court abused its discretion in permitting the State
to introduce testimony of two rebuttal witnesses whose names had not previously been disclosed
to defense counsel. Satoh filed a pretrial discovery motion asking, among other things, for the
State to produce "[a] list of any witnesses the State may intend to call in the trial of this cause, in
its case in chief, or as rebuttal or impeachment witnesses or in connection with the issue of
punishment." The court did not rule on the discovery motion. Rather, the parties apparently
reached some sort of agreement. 
      In rebuttal, the State sought to call M.B. Flippen, a psychotherapist, and Joseph Bon-Jorno,
the coordinator of the state prison's sex offender treatment program. The State had not disclosed
the names of the men as potential rebuttal witnesses. The prosecutor explained that she had agreed
to give Satoh a witness list "prior to voir dire not limited as to rebuttal witnesses. . . ." The court
questioned the prosecutor on her definition of a "rebuttal witness." 
      [STATE]:    Witnesses who I did not know that I would need to call until I saw what their
case-in-chief was. I didn't want this to turn into a battle of experts and I was
not planning to call anybody to talk about that unless they wanted to make it an
issue which in fact they did. 
 
      [COURT]:   Did you have a witness identified to call in quote "rebuttal" end quote to their
expert if they called one?
 
      [STATE]:    I had M.B. Flippen and [defense counsel] was aware that I had already talked
to Mr. Flippen about the case. [Defense counsel] was aware of that because he
had also contacted Mr. Flippen about testifying and he explained to [defense
counsel] that he had already spoken to me about the case and he didn't think it
would be appropriate to listen to him talk about the case also so he stopped him
before he went into the details of the case is my understanding from discussions
with Mr. Flippen.
 
      [COURT]:   Would you assert that [defense counsel] was aware that you had intended to call
Mr. Flippen as a witness?
 
      [STATE]:    I don't know if they were aware I had intended to call him. They were aware
that I had spoken to him about the case. But I wasn't aware that I would call
him as a witness until I saw that they had expert testimony regarding pedophiles.
 
      [COURT]:   When were you aware of that?
 
      [STATE]:    When they called Dr. Dave.
 
      [COURT]:   Not before?
 
      [STATE]:    No, last Friday when we had the motion for continuance, they had some female
expert who was supposed to come to my office and look at the evidence. I knew
that Dr. Dave had been seeing the defendant, but also knew that Dr. Dave was
not anxious to testify in this case and they were trying to find another expert. 
When she didn't show up to examine the evidence in my office on Friday, I
didn't know what their position was going to be as far as expert witnesses went
and I didn't know if I would need to call my expert because I didn't plan to call
my expert unless they called somebody to testify regarding pedophiles.
      Defense counsel explained that, as he understood it, the State had agreed to give Satoh what
he had requested in his discovery motion.


 Although he was aware that Flippen was a
"possibility," "when [the State] gave me the list I thought . . . they were complying with the deal,
so I didn't voir dire specifically on Mr. Flippen because I didn't think there was any need to. And
for all I know, there may be somebody there on that jury that's a client of his, patient of his, and
knows him socially or something like that."
      The court continued questioning defense counsel and the prosecutor:
      [COURT]:   Since the State did not know for sure whether the defense was going to call an
expert in this case, it remained a possibility that the defense was going to call
an expert in the case. And if the State, if the defense did call an expert, it was
your intent to call Mr. Flippen as your rebuttal expert witness.
 
      [STATE]:    Yes, it was.
 
      [COURT]:   That being the case, why did you not give his name as a potential witness prior
to voir dire?
 
      [STATE]:    Because pursuant to the agreed pretrial order, I was not obligated to give his
name since I had stipulated that I would provide a list of the witnesses. That
was not limited as to rebuttal witnesses. And I didn't think that it was—that I
was obligated to give his name.
 
      [COURT]:   Well, we've got one of those complicated situations here. If I had made the
ruling in a contested discovery hearing, what I would have ruled was or would
be that it doesn't make any difference where you call them in the order of trial,
case-in-chief or rebuttal, if you've identified them as potential witnesses that you
may or may not call during the course of the trial, then you're obligated to share
them with the defense so that the defense can exercise [its] legitimate right of
talking to the jury about any connections they might have with that potential
witness. And if I had made that ruling if presented to me, then you would be
in violation of it. But we have a different situation in this case because I did not
make a ruling, but the lawyers apparently came in and said quote "we've
agreed" unquote. A dangerous shortcut that we sometimes indulge and what
you have agreed to is based on your interpretation of what a quote "rebuttal
witness" is unquote. I don't believe it's ever a reasonable interpretation of that
term to mean that merely because you intend to call them in rebuttal that you
can shield them from disclosure. If you had the pretrial intent to call a witness,
they are not immune from disclosure. Now, the rebuttal exception comes into
play when you first determined the need for rebuttal testimony during the course
of the trial and then have to go out and find it and you could not have known
about it in advance. That's the exception to pretrial disclosure of potential
witnesses. I don't think any other rule makes sense. But here we have an
agreement. So, I'm going to permit the man to testify.
      On the defendant's motion showing good cause, the court may order the State to produce
evidence in its possession material to the action. Tex. Code Crim. Proc. Ann. art. 39.14
(Vernon 1979). This right of limited discovery is independent of the defendant's constitutional
right of access to exculpatory evidence. Kinnamon v. State, 791 S.W.2d 84, 91 (Tex. Crim. App.
1990). A defendant does not have a general right to discovery of evidence in the State's
possession. Id. Decisions involving the pretrial discovery of evidence which is not exculpatory,
mitigating, or privileged are within the court's discretion. Id.
      Because the parties "agreed" to Satoh's discovery motion, the court did not rule on the motion
and did not order the State to provide the requested information. Thus, the court did not abuse
its discretion in allowing the undisclosed witnesses to testify. We overrule point three.
      We concur with the court's assessment of this prosecutor's failure to disclose the names of
the rebuttal witnesses—if the State has identified them as potential witnesses (and the prosecutor
admitted that she had identified Flippen as a potential witness), the State is obligated to share the
names of rebuttal witnesses in response to a proper discovery order. As the court stated, had he
ruled on Satoh's discovery motion, the State's actions in this case would have been in violation
of that order. The prosecutor stated that she intended to call Flippen if Satoh called experts. She
also was aware that Satoh was attempting to procure expert testimony—yet she still did not
disclose Flippen's name. By overruling point three, we do not condone the actions of the State
in failing to disclose the names by relying on the fact that they were rebuttal witnesses. 
 

NON-BIFURCATED TRIAL
      In his final point, Satoh complains that the court erred in submitting the case to the jury in a
non-bifurcated trial, citing article 37.07, section 3, of the Code of Criminal Procedure. See Tex.
Code Crim. Proc. Ann. art. 37.07, § 3 (Vernon Supp. 1994). This section simply allows
evidence of a defendant's prior criminal record, his general reputation, and his character to be
offered after a finding of guilt. Satoh pleaded guilty to the jury and therefore the jury heard
evidence to enable it to assess punishment. See id. art. 26.14 (Vernon 1989). Satoh did not object
to the non-bifurcated trial and presents nothing for our review. We overrule point four and affirm
the judgment.


                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed June 1, 1994
Do not publish