**UNITED STATES of America**

**v.**

**Michael Bray SUTTON et al.**

**Crim. No. 71-237.**

United States District Court,
W. D. Tennessee, W. D.

May 5, 1972.

Thomas F. Turley, Jr., U. S. Atty.,
Larry E. Parrish, Asst. U. S. Atty.,
Memphis, Tenn., for plaintiff.

Hal Gerber, Gerber, Gerber, Marshall
& Lane, Memphis, Tenn., Martin S. Ger-
ber, Chicago, Ill., for defendants.

## MEMORANDUM DECISION

BAILEY BROWN, Chief Judge.

In this case, in which the four defend-
ants are charged with distributing, or
with aiding and abetting in the distribu-
tion of sixty pounds of marijuana, de-
fendants filed approximately seventeen
pre-trial motions, some of which consist
of several parts. At a hearing hereto-
fore held, the Government consented to
the granting of some of the motions and
others were ruled upon by the Court.

The purpose of this memorandum decision is to rule upon the remainder of the motions, and the Court has had the benefit of full post-hearing briefs.

For reasons set out in the Government's memorandum filed March 28, 1972, we are of the opinion that defendants' motion to require the Government to furnish them with an FBI "wrap sheet" on the Government's potential trial witnesses and defendants' motion for a separate trial as between defendant Sutton and the other defendants should be denied.

A serious question is raised by defendants' motion to suppress as evidence the marijuana searched for and seized which is the basis of the indictment. An evidentiary hearing was held in connection with this motion. In support of this warrantless search and seizure, the Government offered as a witness Edward Mazurek, a special agent of the Bureau of Narcotics and Dangerous Drugs of the Department of Justice. No other witnesses were offered by either side. All activity occurred in Memphis.

It appears that Mazurek, acting in an undercover capacity, was first in contact with defendants Sutton and Dillman, by telephone, at about 11:30 a. m. on November 1, 1971 and learned that a purchase of marijuana could probably be made. Then on November 2 at about 7:30 p. m. he talked to defendant Dillman by telephone and learned that the marijuana had not come in, that it was "coming from up north, and it's going to take longer than we thought," and that he should call back later that night. At about 10:00 p. m. Mazurek again called and talked to defendants Dillman and Sutton. He then learned that the marijuana would arrive at about midnight. Mazurek sought to have the delivery made at the Welcome Inn Motel, but Dillman and Sutton insisted that it be made at a Holiday Inn on Bellevue and requested that Mazurek come to room 210 there around midnight to discuss final arrangements for delivery and payment. Accordingly, Mazurek and Detective Baker of the Metro Squad, also in an undercover capacity, went to that room at about 12:20 a. m. and there met defendants Sutton and Dillman.

Shortly after Mazurek and Baker arrived, at about 12:40 a. m., Sutton made a telephone call and said: "Bring the stuff over." At around 1:10 a. m., Mazurek heard an automobile approach and stop just outside the door. Then Sutton went to the door, opened it, and asked: "Where is the stuff?" The reply, in a male voice, was: "It's in the trunk." Then Sutton said, "Come on in," following which defendants Williamson and Miss Harney walked in. There were brief introductions, and then defendant Sutton asked Williamson, "Is everything all right?" The reply from Williamson was: "No man, I am splitting," whereupon defendants Williamson and Harney walked out of the room. Mazurek picked up his scales (brought along ostensibly to weigh marijuana) and, with Baker, followed defendants Williamson and Harney. When the officers got outside, they saw these defendants sitting in the front seat of a car and appeared to be preparing to depart. Thereupon the officers placed them under arrest, and about that time Mazurek saw defendants Sutton and Dillman coming out of the room and then retreat back into the room. Mazurek followed and arrested them and made a brief search of the room. Other officers, who were standing by, came upon the scene as the arrests were being made and one of them, procuring the keys to the car, thereupon opened the trunk and seized the involved marijuana.

As stated, there was no search warrant, and it is defendants' contention (1) that there was no probable cause for the search and (2) that, in any event, a warrant was required under these circumstances.

The Government, it should be noted, does not contend that this was a consent search. Nor does the Government contend that the search was incident to the arrest of any of the defendants; we believe that the Government is correct in making this concession.

Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685.

■ We have no difficulty in finding that the officers had probable cause for searching the trunk of the automobile. They had agreed with defendants Sutton and Dillman to purchase the marijuana, Sutton had ordered that the marijuana be brought over, shortly an automobile arrived, and then a man, later introduced as defendant Williamson, stated that the marijuana was in the trunk of the car. It is difficult to conceive of a stronger case of probable cause.

■ ■ Even so, defendants argue, since they were under arrest. and there were at least eight officers on the scene, there was no legal excuse for not then procuring a warrant for the search.[1] In connection with this contention, we have considered, in particular, the following cases: Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730; Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L. Ed.2d 419; Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, and Cash v. Williams, Sheriff, 455 F.2d 1227 (6th Cir. 1972). While it is clear that these decisions control this case, we believe that it would be fruitless for this court to attempt by analysis and exposition to unwind them and thereby arrive at the "true rule." To do so, we think, would require the mind of a medieval scholastic, which we do not have.[2] Rather, we believe, the most we can do is simply list the factors upon which we base our conclusion that a warrant was unnecessary and leave it for higher judicial authority to say whether we are right·or wrong.

The factors that cause us to conclude that a warrant was unnecessary are:

1. The object to be searched was an automobile.

2. The search was made promptly after the escape of defendants Williamson and Harney was prevented and they were arrested.

3. The search was made at the scene of the arrest.

4. The probable cause belief was that there was marijuana in the automobile, and marijuana is contraband.

5. The probable cause for the arrest of defendants Williamson and Harney was the same as the probable cause for the search.

6. The arrests and search occurred at around 1:30 a. m. in the morning, when, common sense tells, judicial officers were not readily available in this community.

An order will be prepared for entry.

---

1. Defendants also argue, much less strongly, that a warrant for the search should have been procured earlier in the evening. The factual predicate for this contention is that the Tennessee Highway Patrol and the Memphis Police Department received a telegram in the early evening of November 2 from a special agent of the Narcotics Division at Springfield, Illinois, stating that defendant Williamson, describing him, would be bringing narcotics to Memphis that night in an automobile, describing it. However, the evidence is that Mazurek and Baker, who were working this case, did not know of the arrival of the telegram until the next day after the arrests and search had been made. Moreover, they did not know how or by whom the mari- juana that they expected to purchase would be transported. The Government does not rely on the information contained in the telegram as a basis for probable cause for this search. Accordingly, we do not believe that the failure to obtain a search warrant prior to the arrests and search, even if it could have properly been obtained based upon the telegram, vitiates the search here.

2. Reading those opinions reminds one of the oft-quoted statement of the late Professor W. Barton Leach of the Harvard Law School to the effect that it is one thing to put the rule against perpetuities in a nutshell but it is another thing to keep it there.