**Larry William FRY, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 44537.**

Court of Criminal Appeals of Texas.

March 8, 1972.

Rehearing Denied May 24, 1972.

On State's Motion for Rehearing
April 18, 1973.

Second Rehearing Denied May 9, 1973.

Laird Palmer, Austin, for appellant.

Robert O. Smith, Dist. Atty., Phoebe Lester, and Michael J. McCormick, Asst. Dist. Attys., Austin, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of burglary. Punishment was assessed by the court at 12 years.

The question presented for our review is whether there was a lawful arrest and search of appellant and a lawful search of his automobile.

The record reflects that during the late evening or early morning hours of January 17–18, 1970, the Green Leaf Nursery in Austin was burglarized. The owner of the nursery stated that a number of rings had been taken from a jewelry case, that approximately $80.00 had been removed from a filing cabinet, and that an undetermined amount of change had been removed from a Dr. Pepper machine on the premises. On the 24th of January, J. A. Presley, the City Marshal of Marble Falls, received information from Johnny Yonnie linking appellant to that burglary. According to Yonnie, appellant had shown him some rings which had been taken from the nursery. This incident had occurred the day after the burglary, while appellant was temporarily residing at Yonnie's home. Yonnie related that appellant, after showing the rings to him, had placed them in his car, a brown Corvair bearing California license plates. Yonnie told Marshal Presley that he had reason to believe that appellant was planning to burglarize a drug store in Burnet. Marshal Presley relayed this information to Elgin Shelburn, the City Marshal of Burnet, including the fact that he "thought there would be stolen property in the car."

At approximately 1:30 A.M. on January 25, 1970, Marshal Shelburn observed appellant's automobile in Burnet, parked behind a drug store in an alley. He immediately contacted his deputy, the Highway Patrol, and Marshal Presley to obtain assistance. The deputy was the first to arrive, and the two officers kept the appellant's automobile under constant surveillance[1] until the other officers arrived. At no time did they observe any sign of movement from within the vehicle.

At approximately 1:50 A.M. Marshal Presley and a Highway Patrolman arrived on the scene. The four officers approached appellant's car and found appellant lying in the back seat, covered with a

---

1. The two officers were approximately 15 to 20 feet from appellant's car, the alley was lighted, and the officers used the headlights of their cars for additional lighting.

blanket. Appellant was ordered out of the car, placed under arrest, and searched. A pocket knife was found and seized. A search of the interior of the car was made and various tools and a pair of gloves were found. The officers then proceeded to the rear of the car, unlocked the trunk and recovered certain rings which were later identified as having been taken from the Green Leaf Nursery. Also recovered from the truck were a radio and two telephones. No consent was given by appellant for the search of his automobile.[2] No warrant was obtained for either the arrest or search, and the officers testified that they had not attempted to obtain such warrants.

A search conducted without a warrant is unreasonable unless the circumstances surrounding the search are such as to bring it within one of the specifically defined exceptions to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 364 (1971); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Stoddard v. State, Tex.Cr.App., 475 S.W. 2d 744 (No. 44,389 1972). The burden is on the state to show that the exigencies of the situation make a search without a warrant imperative. Coolidge v. New Hampshire, supra; Chimel v. California, 395 U. S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); McDonald v. United States, 335 U.S. 451, 68 S.Ct. 191, 93 L.Ed. 153 (1948). The standards applicable to determining whether the factual basis supports an officer's probable cause assessment at the time of the challenged arrest and search are at least as stringent as the standards applied with respect to reviewing the decision of a magistrate. Whitely v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

In order for a warrantless search to be justified, the state must show that probable cause existed for the search and that, under the particular facts of the case, the procuring of a warrant was impracticable. e. g. Chimel v. California, supra; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Stoddard v. State, Tex.Cr.App., 475 S.W.2d 744 (No. 44,389 1972). Probable cause exists where the facts and circumstances within the knowledge of the officer on the scene and of which he has reasonably trustworthy information would lead a man of reasonable caution and prudence to believe that he will find the instrumentality of a crime or evidence pertaining to a crime. Dyke v. Taylor Implement Manufacturing Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); Brinegar v. United States, 338 U. S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, supra. Both of the above elements must be present before a warrantless search can be justified.[3] Where probable cause for the search is lacking, that search will not be upheld merely on the basis of exigent circumstances. Sibron v. New York, 392 U. S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1967); Dyke v. Taylor Implement Manufacturing Co., supra. Likewise, no amount of probable cause can justify a warrantless search where the state has not met its burden of showing exigent circumstances. Coolidge v. New Hampshire, supra; Katz v. United States, supra; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Stoddard v. State, supra.

While the constitutional validity of a warrantless search can only be decided in terms of the concrete factual context presented by each individual case,[4] the categories of exceptions to the warrant requirement are easily recognizable. Among

---

2. See Brown v. State, Tex.Cr.App., 476 S.W.2d 699 (1972).

3. Both, however, need not be present at the exact time the search is made under

certain limited situations. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

4. Sibron v. New York, supra.

these are the search incident to arrest,[5] the plain view doctrine,[6] the hot pursuit rule,[7] the moving vehicle exception,[8] the stop and frisk rule,[9] and the vehicle subject to forfeiture rule.[10] In some cases, more than one of these may be present to justify the search. See generally, Chambers v. Maroney, supra; Johnson v. State, Tex.Cr.App., 466 S.W.2d 735. However, where one or more of these exceptions is applicable, the scope of the search is limited to the purpose which made its initiation permissible. Coolidge v. New Hampshire, supra; Chimel v. California, supra; Haynes v. State, Tex.Cr.App., 475 S.W.2d 739 (1971).

The problem presented by the instant case is that, even assuming a valid arrest, [11] the state failed to meet its burden of showing that exigent circumstances justified the warrantless search of the trunk of appellant's car. We do not question the right of the officers, under the facts presented, to search appellant and the interior of the car to prevent the accused from obtaining a weapon or destroying evidence. e. g., Coolidge v. New Hampshire, supra; Gasery v. State, 465 S.W.2d 377. However, the trunk of the car is beyond the scope of such a search, since it was not readily accessible to the appellant. Chimel v. California, supra. The trunk of the car was closed and locked when the officers approached, and therefore, the objects in the trunk cannot be held to have been within plain view. Compare Coolidge v. New Hampshire, supra, with Gutierrez v. State, Tex.Cr.App., 423 S.W.2d 593.

There is nothing presented to suggest that the automobile was subject to forfeiture. Compare Coolidge v. New Hampshire, supra, with Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

Nor does the mere fact that the place to be searched was an automobile automatically obviate the need for procuring a warrant. e. g. Dyke v. Taylor Implement Manufacturing Co., supra; Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1969); United States v. Payne, 429 F.2d 169 (9th Cir. 1970); Stoddard v. State, supra. "The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." Coolidge v. New Hampshire, supra, 91 S.Ct. at 2035.

In the case of Carroll v. United States, supra, the court held that the search of an automobile without a warrant may be justified under circumstances which would not permit a warrantless search of a building. In Carroll the court found the exigent circumstances to be sufficient where an automobile had been stopped on a highway by officers who had probable cause to believe that the car contained contraband. The reasoning of the court was that the car was moveable, the occupants were alerted, and the car could be quickly moved out of the jurisdiction before a warrant could issue.

In the instant case, the state has failed to show that the circumstances were such that the procuring of a search warrant

---

5. Chimel v. California, supra.

6. Coolidge v. New Hampshire, supra; Curry v. State, Tex.Cr.App., 465 S.W.2d 154; Legall v. State, Tex.Cr.App., 463 S.W.2d 731; Gutierrez v. State, Tex.Cr.App., 423 S.W.2d 593.

7. Chambers v. Maroney, supra; Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

8. Chambers v. Maroney, supra; Brinegar v. United States, supra; Carroll v. United States, supra.

9. Sibron v. New York, supra; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968).

10. Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

11. Under the facts presented, the officers had probable cause to arrest appellant under Art. 14.03 Vernon's Ann.C.C.P.

would have been impracticable. Marshal Presley received his information concerning appellant's automobile sometime during the afternoon of January 24. He was also informed at that time that appellant and the automobile were present at Yonnie's home in Marble Falls. He made no attempt to obtain a search warrant for the car or an arrest warrant for appellant. Approximately twelve hours later, Marshal Shelburn discovered appellant's car in Burnet. He radioed Marshal Presley in Marble Falls, told him that appellant's automobile was "under observation", and made no other move until Marshal Presley arrived. Marshal Shelburn had time to await the arrival of Marshal Presley from another city, yet the record is devoid of any evidence that a magistrate was unavailable. The car was parked in the center of town, under the observation of armed officers, not stopped on the highway after a high speed chase. Nothing in the actions taken by the arresting officers indicates a fear that the car was in danger of being removed from the jurisdiction. Instead, the conduct of the officers indicates the opposite conclusion.

Under these facts, we find that the state failed to meet its burden to show that the warrantless search of the trunk of appellant's car was justifiable.

The judgment is reversed and the cause is remanded.

Rehearing denied.

## DISSENTING OPINION ON STATE'S MOTION FOR REHEARING

DOUGLAS, Judge.

The Green Leaf Nursery on Ben White Boulevard was burglarized by someone cutting the fence and entering the building on the night of January 17 or the morning of the 18th in 1970. Among other things

taken were rings and costume jewelry. A ring was found on appellant's person or in the interior of the car. Some of the items were found in the trunk of the car belonging to Larry Fry, the appellant, in the alley behind Kuykendall's Drug Store in Burnet in the early morning hours of January 25, 1970.[1]

For a better understanding of the case, a more detailed statement of the evidence is set out.

Elgin Shelburn, City Marshal of Burnet, testified that he had received a call from J. A. Presley, the City Marshal at Marble Falls, sometime after 2:00 p. m. on January 24th to be on the lookout for the car with the same description as the one later found in the alley. He was told that the car bore a California license plate and that Larry Fry would be driving it. Officer Presley also told him that a stolen citizen band radio would be in the car. Shelburn had driven through the alley some fifteen minutes before and the car was not there then.

Officer Presley testified that at approximately 1:30 to 3:30 p. m. (January 24th) he had advised the officers of Burnet to look out for the car near Kuykendall's Drug Store in Burnet because he was told that Larry Fry would possibly burglarize that store that night. He also testified that he told the city marshal in Burnet that there would be stolen property in the car.

He testified that he was told by Johnny Yonnie that Yonnie saw the stolen goods in the car that day. He testified that he knew Yonnie and, as far as he knew, Yonnie's reputation was good and considered him worthy of belief. Yonnie also told Officer Presley that Fry had a short time before burglarized Dave's T.V. Store in Marble Falls and got a Lafayette citizen band radio and brought it to Yonnie's

---

1. There is some discrepancy in testimony concerning the dates involved, but it appears that the officers received information concerning Fry on January 24 and the arrest was made sometime after midnight on January 25.

house where Fry was staying and later put it in the car and "that there were some rings that came from a nursery on Ben White Boulevard in Austin." Yonnie also said that Fry was going to burglarize Kuykendall's Drug Store in Burnet soon. Yonnie also told him Fry's name and gave him a description of Fry's car. Presley already knew the car and that it had a California license plate.

Johnny Yonnie testified that he told Officer Presley that Fry showed him the rings around the 18th of January and said that he got them by "hitting a place" in Austin, later shown to be the nursery. On cross-examination on the trial on the merits, Yonnie testified that Fry had told him he had broken into a place and stolen a citizen band radio. Further, Yonnie testified that he had told Officer Presley that Fry "was at my house and had the stolen merchandise in his possession."

Mrs. Yonnie testified that Fry had been staying at their house in Marble Falls. While there, Fry told them that he was a professional burglar and showed them some rings which he said he had taken in the burglary at Austin. Some three or four days before the arrest, Mrs. Yonnie asked Fry to move and the day he left (or moved) he got in trouble and was arrested.

Officer Shelburn also testified that when he saw the car in the alley he called for assistance because he did not know how many people were in the car. He stopped the patrol car and kept the motor running with the lights shining on the California car. Within a few minutes, Officer Presley and a highway patrolman arrived. Shelburn did not know if the appellant was under the wheel and moved to the back seat at the time he drove up. He testified that he had seen drivers move from under the wheel rapidly on several occasions. He was of the opinion that Fry was not asleep when he was in the back seat covered with a blanket.

Officer Presley testified that at the time of the arrest the left door of Fry's car could not be opened because it had "some of these big, superlong whip antennas run through the door handles on the driver's side." He saw a mounting bracket for a Lafayette citizen band radio under the dashboard with the power cable and antenna wire hanging loose. When they opened the trunk, "I found the radio that I was looking for, that was identified by the owner of the radio; it still had his call numbers on it. . . ." and "There was another radio analyzer and two C.B. whip antennas, and quite a bit of information about C.B. radios, etc." He also found rings and costume jewelry, later shown to have been taken in the burglary of the Green Leaf Nursery. In addition, two telephones that had been stolen in Austin were found.

The appellant testified on direct examination that he had been to the penitentiary on three separate occasions.[2] He testified that he had been to the Green Leaf Nursery in Austin on the 17th of January and inquired about some articles. While there he saw the items of jewelry in a showcase. He testified that he was still staying at Yonnie's house on the 24th of January. When he had gone there earlier, he had two stolen citizen band radios in the car and had later sold one of them. He testified that one of them was stolen from him on the night of January 17 or Sunday morning, the 18th, and that he later bought a set from Yonnie. He also testified that he had a Lafayette Constat 25 radio in his car at the time he was arrested. According to his testimony, on the day before the arrest he had gone to Bergstrom Air Force Base in Austin and helped a citizen band radio operator take down an antenna and then met with another such radio operator at Truck City in Austin for coffee. He testified that he left there after midnight and arrived at Burnet at approximately 1:15 or 1:30 a. m. to stay with his grandmother and

2. The State dismissed the two prior felony convictions alleged for enhancement. Many other prior convictions were proved.

to attend church the following day. When he drove by her house he saw no lights and drove to the alley and parked behind one of the buildings. He also testified that he then got in the bedroll in the back seat and assumed that he had just dozed off when spotlights were thrown on his car. He also testified that when he left the Yonnie's house the previous night he told them that he was going to Burnet to see his grandmother.

On cross-examination, he testified that gloves found in the trunk were motorcycle gloves and that the fleece-lined boots were for washing cars. His explanation about the two stolen telephones found in the trunk was that he had found them in a telephone booth in Austin, but he knew that they belonged to the telephone company.

The opinion on original submission apparently questions the right of the officers to make the warrantless arrest of the appellant in the alley during the night, the opinion reversing because, for the purpose of writing on the search, it was assumed that the arrest was legal and the search of the interior of the car (but not the trunk) was legal.

I would hold outright that the officers had the right to arrest the appellant under Article 14.03, Vernon's Ann.C.C.P., which provides as follows:

"Any peace officer may arrest, without warrant, persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws."

The facts for a legal arrest in the present case are stronger than those of Baity v. State, Tex.Cr.App., 455 S.W.2d 305, where Baity was seen walking through an alley at night under suspicious circumstances. The Court held that the officers had a right to investigate. There they had no information that Baity possessed stolen property before they investigated.

In the present case, the arrest was legal. Did the officers have probable cause to search the car? If so, the evidence, including the stolen rings taken from the burglary, was admissible.

In my opinion, the testimony of Officers Presley and Shelburn sufficiently shows probable cause to search the car. This is supported by the testimony of Johnny Yonnie. Yonnie told Officer Presley that the appellant possessed a Lafayette citizen band radio taken in a burglary of Dave's T.V. Store in Marble Falls. The officer was primarily interested in the radio that he ultimately recovered in the search. Officer Presley testified that Yonnie was trustworthy. Yonnie told him that he saw the stolen citizen band radio in the car. This information was given to Officer Presley some ten to twelve hours prior to the arrest. This is not a case where an unnamed informant has given information to an officer and a search warrant has been obtained. Here we have no warrant. Had the information been set forth naming the informant, a magistrate could have issued a search warrant for the stolen goods provided the automobile was at some definite location.

In the recent case of Frazier v. State, Tex.Cr.App., 480 S.W.2d 375 (1972), this Court held:

"We, therefore, hold that the requirements of Aguilar v. Texas, supra, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 are met when hearsay information in an affidavit is derived from *named persons* who supply detailed information suggesting direct knowledge of the information which they have given. United States v. Evans, 447 F.2d 129 (8th Cir. 1971); United States v. Mahler, 442 F.2d 1172 (9th Cir. 1971); United States v. Jensen, 432 F.2d 861 (6th Cir. 1970); Gallagher v. United States, 406 F.2d 102 (8th Cir. 1969), cert. denied, 395 U.S. 968, 89 S.Ct.

2117, 23 L.Ed.2d 756 (19  ); United States v. Pascente, 387 F.2d 923 (7th Cir. 1967), cert. denied, 390 U.S. 1005, 88 S.Ct. 1248, 20 L.Ed.2d 105 (19  ); United States v. Bozza, 365 F.2d 206 (2d Cir. 1966)." (Emphasis Supplied)

The officers had sufficient cause to believe that the appellant possessed the stolen radio (that was later found in the car). The officers arrested the appellant lawfully and the majority assumes that the search of the interior of the car was justified. One officer testified that the arrest was made under the suspicious persons ordinance. No ordinance was introduced, and it was not necessary because the Legislature adopted Article 14.03, V.A.C.C.P., in 1967, the "Suspicious Person's Statute" which applies throughout the State. This arrest was not based upon a traffic offense. An arrest for a traffic offense without evidence of stolen property in the car and without seeing evidence of stolen property, contraband or that another crime had been committed, at the time of arrest, would present a different question.

I would not require the officers to obtain a search warrant for the search of the car under the circumstances of this case even if we had a statute authorizing the issuance of a search warrant for a car not located at any particular place.

Assuming, arguendo, that Yonnie was not shown to be reliable and probable cause was not shown at the time the officers first saw the car parked in the alley, the question of the search of the trunk will be discussed. The officers, while making the legal arrest, saw the mounting for a citizen band radio and superlong antenna whips wired through the door handle of his car in plain view at the time of the arrest. This would add to and substantiate the information received by the officers about the stolen radio. Such a radio and its antennae are evidently not the ordinary type of automobile radio and equipment. A ring was found in appellant's pocket or in the interior of the car before the search of the

trunk was made. At least part of the detailed information turned out to be true. The appellant was found in the car parked behind the drug store that Yonnie had told them would be burglarized. The radio equipment for the described radio was found in an unusual place in the car and the antennae were unconnected. Yonnie had told the officers that the radio was brought in the house and then put back in the car a short time before. This would be another instance for the officers to believe that the radio was disconnected and in the car.

Where officers make an arrest for one purpose and see evidence indicating the fruits of another crime, a further arrest and search may be made. In Taylor v. State, Tex.Cr.App., 421 S.W.2d 403, the conviction was for the possession of marihuana. The arrest was made for passing in a no-passing zone, a traffic violation. Officers saw money wrappers, a large sum of money, then pistols. This Court in the original opinion upheld the search of the trunk of the car where marihuana was found after the car was taken to the courthouse at another town. On motion for rehearing, Judge Onion also upheld the search of the trunk upon probable cause even though the search was made after the occupants were in the courthouse. There the officers had no information that the car contained stolen property when the arrest was first made. See also Gutierrez v. State, Tex.Cr.App., 423 S.W.2d 593, where the Court held sufficient probable cause to search a trunk of an automobile.

The original opinion suggests there were no exigent circumstances for making the search without a warrant. On cross-examination, Officer Presley testified that Yonnie told him that the appellant had taken the radio out of his car, put it in Yonnie's house and then put it back in the car. Yonnie said the appellant then "had gotten in his car and told him [Yonnie] that he was either going to burglarize Kuykendall's drug store or another business establishment in Burnet and that it would be fairly soon, he [Yonnie] thought, and

we ought to keep watch at Burnet for the subject and the car."

Mrs. Yonnie testified that the appellant left their house the day he was arrested. The appellant, by his own testimony, shows that he was not at Yonnie's house in Marble Falls from at least noon on January 24 until 1:15 to 1:30 a. m. January 25. The appellant, according to his testimony, was in Austin at Bergstrom Air Force Base or at Truck City until after midnight when he drove to Burnet, ostensibly to spend the night with his grandmother. The car was not situated so that a magistrate could have issued a search warrant even if one had been requested. The car was not even in Burnet County from the time the officers heard about the stolen goods until sometime after midnight, a few minutes before appellant was arrested. The evidence shows that the officers did not have time to obtain a warrant.

The original opinion points out that Officer Shelburn had appellant's car under observation in the alley and made no attempt to secure a warrant of arrest or search warrant. No arrest warrant was necessary under Article 14.03, supra.[3]

Officer Shelburn testified that there were not many officers in that area. He was no doubt using good judgment in waiting some ten to twenty minutes for help because he did not know how many people were in the car. Would it be reasonable to require some of the officers under the circumstances here to leave the alley to get a search warrant? I think not. With the number of law enforcement officers limited, occupants of a car in an alley past midnight and bent on burglary or robbery might seek an opportunity to shoot their way out of such a situation and possibly cause bloodshed, not only for themselves but for officers. It was common-sense and practical law enforcement for the officers to make the arrest as soon as sufficient reinforcements arrived. Officers should not be required to take more chances than are absolutely necessary.

The fact that the appellant was found in the back of the car, which by his own testimony as well as that of Officer Shelburn could not have been over fifteen or twenty minutes, did not keep the car from being movable. He could have easily moved from the back seat of the Corvair to the front seat and driven away had it not been for an officer present.

Whether a man is under arrest in a car, it is immobilized even if he is under the wheel. There is no valid distinction wherein a search of the car may be conducted under Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), even though the car was not moving immediately before the arrest. The Supreme Court of the United States in Chambers v. Maroney, supra, pointed out, "[I]f an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search." The Court then went on to point out that "[f]or constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment."

In State v. Birdwell, 6 Wash.App. 284, 492 P.2d 249 (Washington Court of Appeals, 1972), the seizure of a trunk containing marihuana from a parked automobile was upheld where the officers had followed the defendant in the car from the place where he picked the trunk up to the address where the trunk was scheduled to be

---

3. It is not to be understood that the writer would hold that the evidence found in the trunk can be used to bolster probable cause. Only the evidence related to the officer, plus the circumstances surrounding the arrest in the alley, before the trunk was searched, should be utilized.

delivered. The Court pointed out that the officers only knew the identification of the automobile for about one-half hour prior to the time of the seizure and they did not know its destination. Furthermore, they did not know what the defendant, or the owner of the car, or anyone else, might do with the automobile. At the time of the seizure, the keys of the automobile had been taken from the car by the driver and given to the owner in the house, where he was arrested.

Chambers v. Maroney, supra, should not be limited to a situation wherein the officers have to stop an automobile to make an arrest. The mobility of the automobile is the key. Just as in Chambers, the automobile in the instant case, even though parked, was occupied and was mobile. It was a fleeting target for a search. Therefore, the search of the automobile, under probable cause, was valid. This is consistent with the interpretation by the Eighth Circuit Court of Appeals in White v. United States, 448 F.2d 250 (1971). In that case, the defendant was taken into custody while slumped over the steering wheel of the automobile. Even though the search of the automobile was under a warrant, the validity of the warrant was attacked. The Court found that it was not necessary to pass upon the question of validity of the warrant because the search was justified as a warrantless search based upon probable cause under the principles of Chambers v. Maroney. The Court pointed out that the car was in custody of the police, but were the defendant to be released the car might quickly disappear; therefore, the warrantless search was valid. See also United States v. Belcher, 448 F.2d 494 (7th Cir. 1971).

The recent case of Stoddard v. State, Tex.Cr.App., 475 S.W.2d 744, is distinguishable. Stoddard was arrested at his office in a building and taken away. The automobile was located outside the building. The car was kept under surveillance by an officer for about two and one-half hours while other officers obtained a search warrant. The search warrant was not based upon sufficient facts to show probable cause and was, therefore, defective. The marihuana seized as a result of the illegal search was inadmissible and for that reason the conviction was reversed.

It was noted that the facts in Stoddard's case were somewhat like those in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), where the arrest was made and a defective warrant was obtained for the automobile which was parked at the home of Coolidge where it had been for some time. The car was towed to the station sometime after the arrest, and it was searched for the first time two days after the arrest. The Supreme Court of the United States reversed Coolidge because there were no exigent circumstances for the search without a valid warrant.

Our Court reversed the conviction in the Stoddard case because "exigent circumstances" were not present to justify a search without a warrant. The Court noted: "This is not a case in which the officers, seeing a moving car in which they have probable cause to believe certain articles are contained, stop the car and search." The Court stated: "We do not mean to hold that 'exigent circumstances' may never exist in the case of a parked car", and, "The test is whether 'exigent circumstances' make the obtaining of a warrant impracticable."

Under the circumstances of the present case, the obtaining of a search warrant in the late hours of the night for a car parked in the alley occupied by its owner and potential driver would have been impractical. Magistrates are not always available at midnight in a small town and as stated before the safety of the officers should be taken into consideration.

The prior concurring opinion is withdrawn.

No reversible error has been shown. The motion for rehearing should be granted and the judgment affirmed.

## OPINION ON STATE'S SECOND MOTION FOR REHEARING

ONION, Presiding Judge.

The question presented by this appeal has given this court great concern and has now sharply divided the court. On original submission, the court unanimously reversed the conviction. One judge wrote a concurring opinion. On rehearing, the concurring opinion was withdrawn and there was filed a dissenting opinion to the action of the majority in overruling without written opinion the State's motion for rehearing.

The State, in a second motion for rehearing, vigorously urges a careful reconsideration of the question, particularly in light of the fact situation presented.

■ Upon an examination of the record in light of the State's second motion for rehearing, I find that I can no longer agree with the majority, whom I have previously joined, and yet, while now agreeing with the result, I cannot accept much of the reasoning advanced by the dissenting opinion by Judge Douglas. Perhaps it is the approach used in each opinion which I cannot presently accept. The opinion on original submission beautifully expounds many of the abstract theories relating to the law of search and seizure, but fails, if it does, in an application of such principles to the facts of the particular case. Under any circumstances, the guidelines so essential, in this day and age of a new approach to criminal prosecution, to the bench and bar, and, yes, even to law enforcement officials, are missing. The dissenting opinion, on the other hand, appears to openly accept in its assessment of probable cause what was found as a result of the allegedly illegal search as well as testimony of witnesses given on the trial on the merits which was

not shown to have been known to the officers at the time of the warrantless arrest and ensuing search. Certainly it is well established that probable cause for a search cannot be bolstered by the results or fruits of the search itself. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Byars v. United States, 273 U.S. 28, 47 S. Ct. 248, 71 L.Ed. 520 (1927); Gaston v. State, 440 S.W.2d 297, 302, n. 4 (Tex.Cr. App.1969) (concurring opinion).[1]

■ As observed in the opinion on original submission,

" . . . [p]robable cause exists where the facts and circumstances within the knowledge of the officer on the scene and of which he has reasonably trustworthy information would lead a man of reasonable caution and prudence to believe that he will find the instrumentality of a crime or evidence pertaining to a crime. Dyke v. Taylor Implement Manufacturing Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968) . . . ."

The State vigorously urges that it recognizes that the search incident to a valid arrest, with or without a warrant, is limited in its scope,[2] but contends there was probable cause to search the trunk of the automobile in question completely independent of the scope of the search incident to the arrest. The State seeks to point out that in the same fact situation there may be probable cause for both.

In Carroll v. United States, 267 U.S. 132, 158–159, 45 S.Ct. 280, 287, 69 L.Ed. 543 (1925), the court wrote:

" . . . The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing

1. See, Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

2. Footnote #3 has now been added to the original dissenting opinion in which the

author disclaims any intention of using what was found by the search in the assessment of probable cause.

officer has for belief that the contents of the automobile offend against the law. . . . "

And, as noted in footnote # 6 of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the Court said:

"In any event, as we point out below, the validity of an arrest is not necessarily determinative of the right to search a car if there is probable cause to make the search. Here, as will be true in many cases, the circumstances justifying the arrest are also those furnishing probable cause for the search." 399 U.S. at 47, 90 S.Ct. at 1979.

In the same opinion, the Court, in footnote # 8, wrote:

"Nothing said last term in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), purported to modify or affect the rationale of *Carroll*. As the Court noted:

'Our holding today is of course entirely consistent with the recognized principle that, assuming the existence of probable cause, automobiles and other vehicles may be searched without warrants "where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." Carroll v. United States, 267 U.S. 132, 153, 45 S. Ct. 280, 285, 69 L.Ed. 543; see Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879.' 395 U.S., at 764 n. 9, 89 S.Ct. 2034."

The facts are most important in the assessment of probable cause.

City Marshal J. A. Presley of Marble Falls was investigating a burglary in that town in which a citizens band radio had been taken. On January 24, 1970, he came in contact with one Johnny Yonnie,[3] who told him that the appellant Fry had committed a burglary in Marble Falls and had a citizens band radio in his car. He also informed Presley that the appellant had "hit" a place in Austin and had a number of rings which he had also seen in the car. A description of the car was furnished. Presley had seen the car on several occasions and knew it bore California license plates.

Yonnie revealed that the appellant also planned to burglarize Kuykendall's Drug Store in Burnet sometime "soon."

Yonnie explained that the appellant had been staying at his house in Marble Falls and that he had seen the stolen merchandise in the appellant's car.

Yonnie had lived in Marble Falls for only a short time, but Presley knew him and considered him trustworthy.

Presley relayed the information received to Elgin Shelburn, City Marshal of Burnet, about 2 p. m. on January 24th.

Apparently, no effort was made to obtain an arrest or search warrant nor was there any indication that Presley believed, at this point, he possessed sufficient probable cause to obtain either from a magistrate.

Marshal Shelburn related that while on patrol in Burnet on January 25, 1970, at approximately 1:30 a. m., he observed an automobile fitting the description parked in an alley behind a drug store. It had not been there fifteen minutes earlier. He kept his vehicle's headlights on the parked brown Corvair with California license plate and called for assistance. His deputy arrived, blocking the other exit of the alley, and trained his vehicle's lights on the parked Corvair. No movement inside the vehicle was observed.

---

3. Presley could not remember whether Yonnie came to him or that in the course of his investigation he had occasion to question him if he had heard anything about a burglary. Presley explained that he had talked to a number of people in Marble Falls about the burglary. Yonnie recalled that he went to Presley with his information.

Within twenty minutes or so, a Highway Patrolman and Marshal Presley arrived, and the four officers approached the Corvair. The appellant was found on the back seat lying in a bed roll or blanket. The left side of appellant's car could not be opened because some "superlong" whip antenas had been run through the door handles. The appellant was placed under arrest and a search incident to that arrest revealed a ring or rings.[4] During the course of the arrest, Marshal Presley observed a mounting bracket for a Lafayette citizens band radio and the power cable and antenna wire hanging loose under the dashboard of the car.

Thereafter, the officers made a warrantless search of the locked trunk of the car finding a number of rings, shown to have been taken in the instant burglary; the citizens band radio sought by Officer Presley; two telephones; a radio analyzer; two C. B. radio whip antennas, etc. It is the admissibility of these items, or testimony concerning the same, of which the appellant complains.

■ The prior opinions agree, although not harmoniously, that there was probable cause to make a warrantless arrest. See, Article 14.03, Vernon's Ann.C.C.P. And, certainly, a search incident to that arrest was proper so long as it was within the scope permitted by Chimel v. California, supra.

■ Now, at the time the warrantless search of the trunk took place immediately after the search incident to arrest, were the officers legally authorized to take the action they did, so that the fruits of such search were rendered admissible?

The informer stated that he knew, of his own personal knowledge, where the stolen merchandise from two burglaries was, be-

cause he had personally seen such merchandise in appellant's car. Thus, the first prong of the *Aguilar* test was met. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

As to whether the informer was "credible" or his information "reliable"—the second prong of the *Aguilar* test—we note that Marshal Presley testified that he knew the informer Yonnie and considered him trustworthy. The length of acquaintanceship is not shown. Yonnie had lived in Marble Falls only a short time and did not work there. He was an informer of untested reliability, and there is no evidence that the officer made any independent investigation in an attempt to support the credibility of this first-time informer. See, Adair and Via v. State, 482 S.W.2d 247 (Tex.Cr.App. 1972). Yantis v. State, 476 S.W.2d 24 (Tex.Cr.App.1972); Wetherby v. State, 482 S.W.2d 852 (Tex.Cr.App.1972). It is observed, however, that Officer Presley knew there was a car as described by the informer.

The information received by Presley, including the fact that the appellant planned to be in Burnet "soon" to burglarize a drug store there, was relayed to Marshal Shelburn in Burnet. Within a matter of hours, Shelburn, at 1:30 a. m., found the car described parked in an alley behind the drug store where it had not been fifteen minutes before. Upon the arrival of assistance, Shelburn approached the vehicle. The appellant was discovered therein. A search incident to a valid arrest pursuant to Article 14.03, supra, ensued. Such a search revealed a mounting bracket for a radio such as one being sought. A ring or rings were also found as a result of such incidental search. At this point of interception, every fact related by the informer, except the presence of the stolen merchandise described, was verified. *Cf.*, e. g., Draper v.

---

4. Marshal Shelburn, when asked what was found "inside the defendant's car," answered, "Found things . . . rings . . . . It is not clear whether this refers to the interior or the trunk of the car. Marshal Presley testified "a ring" was recovered but he didn't remember whether it was taken from appellant's pocket or from the interior of the car in a search incident to arrest.

United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Rangel v. State, 444 S.W.2d 924 (Tex.Cr.App.1969); Almendarez v. State, 460 S.W.2d 921 (Tex.Cr. App.1970). The officers certainly had cause to believe that evidence of crime was concealed in the automobile.

■ At this juncture, if not before, the officers obviously had probable cause to search the vehicle for all of the stolen property, independent of the search incidental to arrest, provided they were not required by law to first secure a search warrant under the circumstances.

If the officers had left the car unattended on the public street or alley, it could have been easily moved out of the locality or jurisdiction by a friend, relative, confederate, or even by the appellant himself if he had secured his release on bail prior to the time the officers could have executed a written affidavit and contacted a magistrate. It should be remembered that the incident in question occurred at approximately 1:50 a. m. Clearly, exigent circumstances were presented which would have justified the warrantless search, there being probable cause to search.

If the car had been placed under guard or removed and impounded at the police station until a search warrant had been procured, then this intrusion would have been just as great as the warrantless search of the car trunk in the alley.

In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the Court said:

"Neither *Carroll, supra*, nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords. But the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable. Where this is true, as in *Carroll* and the case before us now, if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search.

" . . . .

"Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater.' But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *399 U.S. at 50–52, 90 S.Ct. at 1980–1981.*

I cannot agree that the search was unreasonable under the Fourth Amendment. See, also, Article 1 § 9, Texas Constitution, Vernon's Ann.St.; Article 1.06, Vernon's Ann.C.C.P. The evidence seized in the search of the car's trunk and testimony relating to the same were admissible into evidence. I would grant the State's second motion for rehearing, set aside the judgment of reversal and affirm the judgment.

MORRISON, J., joins in this opinion.

DOUGLAS, Judge (concurring).

A majority now agree that this cause should be affirmed. In addition to my original dissenting opinion, a discussion of other authorities and reasons which allow the search of a motor vehicle or its trunk follows.

After the original opinion was written, this Court construed Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, with Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), in Harris v. State, Tex.Cr.App., 486 S.W.2d 88.

In that case an informer who had previously given the Dallas police reliable information told a special agent that Harris would arrive at the China Doll Lounge in a white Cadillac, license number LTC 92, and that he would have in his possession a quantity of drugs. The officers went to the lounge and saw the appellant arrive in the described vehicle and enter the club. The officers entered the lounge, arrested and searched him and found nothing. They then took him outside to the automobile. In an apparent effort to unlock the door, Harris broke the key. After this, the officers entered and searched the car and found the drugs in question. This Court noted that the facts surrounding the arrest were very similar to the facts in Draper v. United States, supra. The opinion went on to say that, while the informer had not actually seen the contraband on the suspect, the officers were able to verify numerous details supplied by the informer. In essence, this Court held that all of the information was corroborated when Harris arrived at the specific time and place, thus, under Draper, the police had probable cause to believe that the appellant had the drugs in his possession.

This Court distinguished the Harris case from Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and Stoddard v. State, Tex.Cr.App., 475 S.W.2d 744. It noted that even though there was probable cause to search the vehicle in those two cases, there was an absence of exigent circumstances. Yet, in distinguishing Harris, this Court relied on Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, and Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, and pointed out that it was not incumbent upon the officer to obtain a warrant before proceeding further upon an informer's tip which had ripened into probable cause. The Court also concluded that after having searched appellant and finding no contraband, the officers would have violated appellant's constitutional rights if they had detained him to await the procuring of a search warrant for the car and execution of the same. This Court noted: "Herein lies an important distinction between the instant case and Coolidge v. New Hampshire, supra, and Stoddard v. State, supra, where the defendants were already in jail before the search was initiated." Harris v. State, supra, 486 S.W.2d at page 90. This very same reasoning and logic is applicable to the case at bar. Should Officers Presley and Shelburn have detained appellant until a search warrant could be obtained? Clearly not, in light of the Harris decision. Here, as in Harris, the informer's information was not corroborated until the time the arrest was made. With as many facts as were corroborated, the officers had probable cause to suspect that the stolen radio was somewhere in the vehicle. The exigent circumstances are present in the instant case just as they were in Harris v. State, supra.

In Brown v. State, 475 S.W.2d 938, 950, a search of the trunk of an automobile that Brown had been driving was made in his absence without a warrant some twelve hours after the officers received information of the crime of murder. Presiding Judge Onion, in discussing an emergency within the meaning of the "exigency rule," wrote: "And the criterion is the reasonableness of the belief of the police as to the existence of an emergency, not the existence of an emergency in fact" and cited several cases to the same effect.

For cases from other jurisdictions authorizing the search of motor vehicles and in some instances their trunks, see United States v. Menke, 468 F.2d 20 (3 Cir. 1972) (a well reasoned opinion by Judge Aldisert); State v. Jones, 1972, 263 La. 164, 267 So.2d 559; United States v. Gomori, 437 F.2d 312 (4th Cir. 1971); United States

v. Free, 141 U.S.App.D.C. 198, 437 F.2d 631 (1970); Dodd v. Beto, 435 F.2d 868 (5th Cir. 1970), upholding Dodd v. State, 436 S.W.2d 149 (Tex.Cr.App.1969); United States v. Drew, 436 F.2d 529 (5th Cir.); and United States v. Sutton, 341 F.Supp. 320 (D.C.W.D.Tenn.1972), for a discussion of the factors to be considered in permitting a search without a warrant.

For other Texas cases, see Gomez v. State, 470 S.W.2d 871 (Tex.Cr.App.1971); Almendarez v. State, 460 S.W.2d 921 (Tex. Cr.App.) and Coyne v. State, 485 S.W.2d 917 (Tex.Cr.App.1972).

For the reasons stated in the original dissenting opinion and in this opinion, I agree, as I did on the State's motion for rehearing, that the State's second motion for rehearing should be granted and the judgment affirmed.

ODOM, Judge (dissenting).

Two members of this court remain completely convinced of the correct disposition of this case on original submission. We are deeply concerned that the majority opinion now gives the police unbridled authority to search automobiles whenever an investigative arrest can be justified. This case should be reversed for the reasons stated in my opinion on original submission. However, in light of the obvious misconceptions that have arisen concerning that opinion and in order to clearly delineate the points upon which I disagree with the majority, I again state my reasoning.

The majority position seems to be that the arresting officers did not have probable cause to search the trunk of appellant's car until after Marshal Presley had arrived from Marble Falls and they had had an opportunity to look into the car. This position is based on their findings: (1) that the officers did not have sufficient information concerning the informant's credibility to obtain a warrant for the search of appellant's car while that car was at the informant's home in Marble Falls; (2) that

the locating of appellant's car behind the drug store in Burnet did not sufficiently corroborate the informant's tip to constitute probable cause at that time; and (3) that probable cause to search the car arose upon the finding of "a ring or rings" and "a mounting bracket for a Lafayette citizens band radio and the power cable and antenna wire hanging loose from the dashboard of the car." The majority concludes:

"At this point of interception, every fact related by the informer, except the presence of the stolen merchandise described, was verified. Cf., e. g., Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed. 2d 327 (1959); Rangel v. State, 444 S.W. 2d 924 (Tex.Cr.App.1969); Almendarez v. State, 460 S.W.2d 921 (Tex.Cr.App. 1970)."

At the hearing on appellant's motion to suppress, the following testimony, concerning the search of appellant and the interior of the car, appears:

(1) Marshal Shelburn:

"Q. Did you observe anything in the way of a weapon, or contraband, or any stolen property taken from this defendant's person—from his body?

A. A knife is the only object I remember—the only weapon I remember.

Q. Was it a pocket knife?

A. A pocket knife.

Q. Did you search the inside of the defendant's car?

A. Yes, sir.

Q. What did you find—did you find any weapon or anything in the nature of contraband inside of the defendant's car?

A. Found things—rings—

Q. In the interior—we will get to the trunk—but the interior?

A. In the interior there were—well, was knives in there, I believe, in

the glove compartment and under the seat, different types of tools, screw drivers and such as that.

Q. All right. And when you had talked to Officer Presley earlier, did he tell you what stolen merchandise was allegedly in the car, what merchandise he was looking for?

A. A radio, a Citizens Band Radio.

Q. Anything else?

A. That's all I recall at the time."

(2) Marshal Presley:

"Q. Did you find anything that you believed to be contraband, stolen property, on the defendant's person?

A. I didn't search him, sir.

Q. Did you observe anything like that found on his person?

A. I think there was a ring in his pocket.

Q. Did you observe any—you think there was—did you see a ring taken from his pocket?

A. I saw a ring; I don't remember whether it was taken from his pocket or the interior of the car.

Q. Did you search the interior of the car?

A. I helped.

Q. You helped. In the course of your search of the interior of the car, did you find anything you believed to be stolen property in the interior of the car?

A. There was a mounting bracket and connection cable for a Citizens Band radio on the dashboard.

Q. Was there a radio in the car?

A. Not in the interior, no, sir."

At the appellant's trial, Marshal Presley testified:

". . . When we first got the subject out of the car, I asked him to identify himself, and I asked him after he had been placed under arrest by Deputy Marshal Burns from Burnet, I asked if he had a radio of the description I was looking for and he said 'no'. We looked inside the car and there was a mounting bracket for this kind of radio under the dashboard of the car, still in place, with the power cable and the antenna wire hanging loose. When we opened the trunk, I found the radio that I was looking for, that was identified by the owner of the radio; . . ."

On cross-examination:

"Q. Was anything else stolen in this burglary of Dave's TV Store other than a Citizens Band radio?

A. As far as we were able to determine, no, sir.

Q. Nothing else.

A. As far as we could determine."

Also at the trial, Lt. Kendall Thomas of the Burglary Detail of the Austin Police Department, who was not present during the search but who later inventoried the items seized, testified:

"Q. All right. Now, I believe you stated you counted how many—Nineteen total rings?

A. Nineteen total rings.

Q. Altogether; of which some were ladies rings and some were men's rings?

A. The seventeen still had the identification on them; you know, like the dealer puts on them. Two were obviously worn rings.

Q. Now, two of them were the rings you stated you could not identify as stolen, and returned to this defendant?

A. That is correct.

Q. And the other seventeen, you kept three as evidence and returned fourteen to Mr. Anderson of the Green Leaf Nursery.

A. Right."

From the above quoted testimony, reflecting what was found during the search of appellant's person and of the interior of his car, the majority infers that "a ring or rings" were removed during the search incident to arrest, that they were contraband, and that the mounting bracket was stolen property. I can find only that one officer "thought" he saw "a ring" recovered as the result of such search, that two rings, recovered at some point during the search of either appellant, the interior of his car, or the trunk, were returned to him because they were "obviously worn," and that the record affirmatively refutes the inference that the mounting bracket was contraband or that the arresting officers believed it to be contraband.

Assuming *arguendo* the validity of the majority position that the officers did not have probable cause to search until they had conducted a search incident to an investigative arrest, I can find nothing in the record which would give them probable cause thereafter. The state bears the burden of proving that the circumstances surrounding the search are such as to bring it within one of the specifically defined exceptions to the warrant requirement. E. g. United States v. United States District Court for the Eastern District of Michigan, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); United States v. Menke, 339 F. Supp. 1023 (W.D.Pa.1972); Brown v. State, Tex.Cr.App., 481 S.W.2d 106; Stoddard v. State, Tex.Cr.App., 475 S.W.2d 744. Under these decisions, I find that the state has failed to meet its burden of proof in the instant case.

The majority, on the other hand, reads this record so as to supply the deficiencies in the state's proof by innuendo and assumption. As a legal basis, they rely on the decisions of the United States Supreme Court in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, and Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

Chambers v. Maroney, supra, stands for the proposition that, " . . . *given* a justified initial intrusion, there is little difference between a search on the open highway and a later search at the station." Coolidge v. New Hampshire, supra, at fn. 20.

In *Chambers*, the initial intrusion is easily justifiable. The car was stopped on the highway less than an hour after a robbery on the basis of a specific description of the vehicle and its occupants which had been obtained from the victim of the crime and two eye-witnesses. Since these robbers were in the process of escaping, no time was available in which a warrant could be obtained. Relying on the moving vehicle cases, Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), and Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the court in *Chambers* upheld the validity of the initial intrusion.

*Carroll* and *Brinegar* dealt with situations in which officers, stationed on a lonely highway, had probable cause to believe that a particular automobile, being driven on that highway, contained "bootlegged" whiskey. The Supreme Court upheld these searches since, under the circumstances presented, to require a warrant would be to make the search impossible. The officers in these cases did not have probable cause to arrest, only probable cause to search. Therefore, the opportunity to search was "fleeting".

In *Chambers*, the fact that the defendant's automobile was stopped by the police in a dark parking lot less than an hour after the commission of the crime made the procuring of a search warrant impracticable and justified the initial intrusion.

The rationale of *Chambers* is quite clear that:

> "Neither *Carroll*, supra, nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords."

Thus, *Chambers* did not authorize all warrantless searches of autos. It, instead, followed the well-defined exception to the warrant requirement annunciated in *Carroll* and *Brinegar*. If the officers have time to procure a warrant *prior to the initial intrusion, Chambers, Carroll,* and *Brinegar* are no longer applicable. Coolidge v. New Hampshire, supra; Chaires v. State, Tex. Cr.App., 480 S.W.2d 196; Stoddard v. State, supra. The question in the instant case being whether the initial intrusion was justified, the holding in *Chambers* is inapplicable.

In order to find "exigent circumstances" under *Chambers* in the instant case, the majority thus is forced to find that probable cause arose only after the officers had detained appellant for investigative purposes under Article 14.03, V.A.C.C.P. For the proposition that probable cause arose at that time, the majority relies on the holding of the Supreme Court in Draper v. United States, supra. Under the record now before us, *Draper* is inapplicable.

In *Draper*, the informant was a named "special employee" of the Bureau of Narcotics who had furnished the arresting federal narcotics agent with correct information over a six months period. The information furnished by this "special employee" was that Draper would be returning to Denver from Chicago on either the morning of September 8 or September 9, and that he would have in his possession three ounces of heroin. The arresting agent was also given a physical description

of Draper, his clothing, and his mannerisms. Given the specificity of the information and the reasons for relying on such information, the Court found probable cause to arrest Draper. The Court upheld the subsequent search and seizure of evidence in Draper's hand and in the zipper bag which he was carrying as being within the scope of a search incident to that arrest.[1]

In the instant case, the majority concedes that the officers knew little concerning the informant's reliability and that the record is devoid of evidence that they attempted to remedy this deficiency. From the above quoted portions of the record, the majority infers that rings were found during the search of appellant and his car, that they were contraband, and that either the mounting bracket was contraband or that persons who have such mounting brackets in their cars have stolen Citizens Band radios in their trunks.

The testimony concerning the finding of a ring on appellant or within the interior of his car is ambiguous, and nothing in the record indicates that the mounting bracket was contraband. The testimony of Marshal Presley at appellant's trial, in fact, affirmatively suggests the contrary. Nothing in the record suggests that these items were contraband, were proceeds of a crime, or resembled items taken during a crime. Since the majority opinion concedes that probable cause did not arise until these items were found and since the items found were in themselves innocuous, I find nothing which would corroborate the information of an admittedly unproven informant sufficiently to constitute probable cause to search the trunk of appellant's car. Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); Brown v. State, supra. See also Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L. Ed.2d 612 (1972).

---

1. Note that the search in *Draper* was within the limits established by Chimel

v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

As I understand the majority opinion,[2] and the state's argument upon which it is predicated, probable cause to search the trunk of appellant's car did not arise in the instant case until after the search incident to an investigative arrest under *Draper*, which provided the state with exigent circumstances under *Chambers*, and the reasoning of such decision somehow provides probable cause to search under *Draper*; i. e., "bootstrapping" both probable cause and exigent circumstances. Having determined that neither *Chambers* nor *Draper* can be legitimately applied in this manner, I strongly disagree with such reasoning.

Likewise, I cannot agree that this court should take upon itself the burden of correcting the deficiencies in the state's proof by making tenuous inferences from the record, nor can I understand why the majority feels compelled to do so in the instant case. To the contrary, the state, bearing the burden of justifying a warrantless search, must clearly establish the existence of the facts upon which it relies for such justification. E. g. United States v. United States District Court, supra; Coolidge v. New Hampshire, supra; Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); Katz v. United States, 389 U.S.

347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Brown v. State, supra; Stoddard v. State, supra. Since the existence of the facts upon which the majority rests its decision can only be determined by inference, I find that the state has failed to meet its burden of justifying the warrantless search of the trunk.

I am concerned that the effect of the majority opinion will be to extend the scope of a protective search incident to an investigative arrest under Article 14.03, V.A.C.C.P., far beyond the needs for the protection of police officers. See Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) and Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1967).

I am also concerned that the majority opinion completely and automatically obviates the need for obtaining a search warrant when the place to be searched is a moveable vehicle. See and compare, Coolidge v. New Hampshire, supra; Stoddard v. State, supra.

I vigorously dissent.

ROBERTS, J., joins in this dissent.

2. My confusion on this point is based upon the majority's statement, after presumably finding that probable cause to search did not arise until after the protective search, that:
"At this juncture, *if not before*, the officers obviously had probable cause to search the vehicle for all of the stolen property, independent of the search incidental to arrest, provided they were *not required by law to first secure a search warrant* under the circumstances." [Emphasis added]
If, by this statement, the majority intends to infer that probable cause arose when Marshal Shelburn discovered appellant's car in Burnet, as I assumed *arguendo* in my original opinion, they do not explain and the record does not indicate any justification for the officers' waiting twenty minutes, with appellant's car surrounded and both ends of the alley blocked, without making any attempt to obtain a search warrant or show why

such a warrant could not have been obtained. See my opinion in this cause on original submission.
Mention is made by the majority that "(I)t should be remembered that the incident in question occurred at approximately 1:50 a. m. Clearly, exigent circumstances were presented which would have justified the warrantless search, there being probable cause to search." If the view taken by the majority is that the police were excused from seeking a warrant because the hour was late, I reject it. The vital protections of the Fourth Amendment should not hinge upon the convenience of the police, prosecutors and judges. If the procedures of our government are such that police officers are unable to secure warrants outside of ordinary business hours, then the cure for that problem is not to sacrifice the Fourth Amendment rights of our citizens, but to improve the warrant procuring procedure.