

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| CLAUDIA PATRICIA ROCHA SOLIS, | § | No. 08-18-00101-CR |
|  | § |  |
| Appellant, | § | Appeal from |
|  | § |  |
| v. | § | 120th District Court |
|  | § |  |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
|  | § |  |
| Appellee. | § | (TC # 20170D03568) |
|  | § |  |

## O P I N I O N

A jury convicted Claudia Patricia Rocha Solis, Appellant here, of possession of methamphetamine and "theft or attempted theft" of property. This latter conviction may seem strange, given that theft and attempted theft are technically two different offenses, with two different punishment ranges. On appeal, Appellant claims the evidence is insufficient to support the possession conviction. She also complains that the jury was inappropriately charged in the trial's punishment phase on how to sentence someone for "theft or attempted theft." We reject her sufficiency challenge. We are more sympathetic to the perplexities of the sentencing problem created by the wording of the theft related charge. Nonetheless, we conclude that she has not shown reversible error on that ground and affirm the convictions below.

## BACKGROUND

Both convictions arise out of events occurring at a Home Depot store on June 29, 2017. That evening, Francisco Sanchez, a Home Depot asset protection officer, observed Appellant come into the store holding a receipt. She then went to several aisles to collect four items that turned out to be the merchandise listed on the receipt. Sanchez discreetly followed her, until she took the merchandise to a customer return desk.

The clerk at the return desk inspected two items that Appellant wanted to return. They had a value of $123.91 with tax. By use of a signal, Sanchez directed the clerk to proceed with the return, but not to hand any cash to Appellant. The clerk completed the transaction to point where she closed the register door, and the register printed a return receipt. The only thing that did not happen was handing cash for the returned items to Appellant. At that point, Sanchez approached Appellant and instructed her to accompany him back to the asset protection office. Appellant initially followed Sanchez, but as they passed the building's exit, she pushed him away and tried to leave the store. He attempted to hold onto her until the police arrived. In the ensuing struggle, Sanchez claimed that Appellant kicked him in the legs, bite his hand, and pulled a pen out of his pocket and jabbed him in the ribs. At trial, he testified that the pen jab caused him "slight" pain, the kicking caused no pain, and the bite, which did not break the skin, hurt "slightly[.]" Appellant was able to break away and ran out of the store, leaving behind her flip-flop shoes and a purse. Surveillance cameras documented the events at the front of the store, including what transpired at the return desk and the ensuing struggle between Sanchez and Appellant.

A police cruiser soon arrived, and Sanchez gave the officers Appellant's description and the direction in which she fled. The police quickly spotted Appellant and instructed her to stop. She ran away, however, causing the officers to give short chase and arrest Appellant for evading arrest. When first in custody, Appellant claimed she could not breathe. The officers summoned

2

paramedics who then transported her to a hospital. The officers then returned to Home Depot to complete their investigation. Officer Isaiah Rodriquez obtained a copy of the store surveillance tape, the receipt that Appellant used, and the officer took photos of the possible injuries to Sanchez. Officer Rodriguez also collected what he was informed was Appellant's purse. When he looked in the purse to locate identification, he found two small clear baggies with what he believed was crystal methamphetamine.

Based on these events, the State brought a two-count indictment against Appellant. One count charged her with robbery, contending that in course of a theft, she caused bodily injury to Sanchez by biting and stabbing him. The second count alleged that Appellant was in possession of less than one gram of methamphetamine. The counts were tried to together to a jury. The State presented its case through the testimony of loss prevention officer Sanchez, police officer Rodriguez, and an analyst who confirmed that the contents of one of the two samples she tested contained methamphetamine. The analyst did not test the contents of the other baggie because even if was methamphetamine, the aggregate weight of both would not exceed one gram, which is the next penalty phase up.

The jury found that Appellant was not guilty of robbery but was guilty of "theft or attempted theft" of between $100 and $750. The jury also found Appellant guilty of possession of less than one gram of methamphetamine. The jury assessed a two-year sentence on the possession count (along with a $250 fine), and a six-month sentence on the "theft or attempted theft" charge (along with another $250 fine). The sentences were to run concurrently.

Of the several issues developed at trial, only two are brought forward on appeal. First, Appellant contends the evidence supporting the possession charge is insufficient because the State never proved she possessed the methamphetamine (Issue One). Second, Appellant contends that

the jury was incorrectly charged in the punishment phase on the "theft or attempted theft" conviction. We take those issues in turn.

## SUFFICIENCY OF THE EVIDENCE

In Issue One, Appellant contends the evidence is legally insufficient to support the possession conviction because there was no proof Appellant actually possessed the methamphetamine that the State tested and admitted into evidence. The argument focuses on the chain of custody of the purse turned over to the police and the baggies seized from that purse through the point that an analyst confirmed the substance as methamphetamine.

### Standard of Review

Evidence is legally sufficient when, viewed in the light most favorable to the verdict, *any* rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010)(establishing legal insufficiency under *Jackson v. Virginia* as the only standard for review of the evidence).

The jury is the sole judge of credibility and the weight attached to the testimony of each witness. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014). It is the fact finder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007), *quoting Jackson*, 443 U.S. at 319. The jury also may choose to believe or disbelieve that testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex.Crim.App. 2008); *Belton v. State*, 900 S.W.2d 886, 897 (Tex.App.--El Paso 1995, pet. ref'd). When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Dobbs*, 434 S.W.3d at 170; *see also Jackson*, 443 U.S. at 319.

4

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone may be sufficient to establish guilt. *Dobbs*, 434 S.W.3d at 170; *Carrizales v. State*, 414 S.W.3d 737, 742 n.20 (Tex.Crim.App. 2013). Each fact need not point directly and independently to the guilt of the defendant, so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Dobbs*, 434 S.W.3d at 170.

We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson.*" *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). However, "[w]e are not to sit as a thirteenth juror reweighing the evidence or deciding whether we believe the evidence established the element in contention beyond a reasonable doubt[.]" *Blankenship v. State*, 780 S.W.2d 198, 207 (Tex.Crim.App. 1988). Instead, "we test the evidence to see if it is at least conclusive enough for a reasonable factfinder to believe based on the evidence that the element is established beyond a reasonable doubt." *Id.*, *citing Jackson*, 443 U.S. at 318.

### The State's Burden

We begin with what the State needed to prove by measuring the evidence against the elements of the offense as defined in a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex.Crim.App. 2009). Methamphetamine is classified as a controlled substance in Penalty Group 1. TEX. HEALTH & SAFETY CODE ANN. § 481.102(6). It is a state jail felony to knowingly or intentionally possess methamphetamine having an aggregate weight of less than one gram (including adulterants or dilutants), unless, among other things, the person obtained it under a valid prescription. *Id.* at § 481.115 (a), (b). Thus, under a hypothetically correct jury charge, the State was required to prove that Appellant knowingly or intentionally possessed methamphetamine weighing less than one gram, including adulterants and dilutants. To prove

5

unlawful possession of a controlled substance, the State must prove the accused (1) exercised care, control and management over the contraband, and that (2) the accused knew the substance possessed was contraband. *Martin v. State*, 753 S.W.2d 384, 387 (Tex.Crim.App. 1988); *Menchaca v. State*, 901 S.W.2d 640, 651-52 (Tex.App.--El Paso 1995, pet ref'd).

When the contraband is not in the exclusive possession of the accused, a fact finder may nonetheless infer that the accused intentionally or knowingly possessed the contraband if there are sufficient independent facts and circumstances justifying such an inference. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex.Crim.App. 2005), *citing Deshong v. State*, 625 S.W.2d 327, 329 (Tex.Crim.App. 1981). Sometimes referred to as "affirmative-links," the law's intent is to protect innocent bystanders from conviction based on only proximity to contraband. *Poindexter*, 153 S.W.3d at 406. To that end, courts have developed a list of non-exclusive factors that may indicate a link between the accused and his or her knowing possession of contraband. *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex.Crim.App. 2006).[1] Ultimately, however, our inquiry is whether the combined and cumulative force of the evidence and any reasonable inferences rationally justified

---

[1] The *Evans* court noted these factors might include:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

202 S.W.3d at 162 n.12, *quoting Olivarez v. State,* 171 S.W.3d 283, 291 (Tex.App.--Houston [14th Dist.] 2005, no pet.). Only a few of these factors would be helpful in deciding if Appellant possessed the methamphetamine found in the purse. *Evans* notes, however, the list is non-exclusive, and the affirmative link analysis is not a separate test for sufficiency. 202 S.W.3d at 162 n.9.

the jury finding guilt beyond a reasonable doubt. *Tate v. State*, 500 S.W.3d 410, 413-14 (Tex.Crim.App. 2016).

**Application**

The first question raised by Appellant is whether she possessed the purse from which Officer Rodriguez recovered the methamphetamine. By the time Officer Rodriguez took possession of the purse, Appellant was off-premises and on her way to the hospital. The officer searched the purse for identification, such as a driver's license or the like, but found none. Home Depot did not document a chain of custody for the purse as would the police, for instance, had this been a crime scene run by a police forensic unit. Nonetheless, we find the cumulative force of the evidence sufficient to show the purse recovered was indeed Appellant's purse.

First, loss control officer Sanchez explained how Appellant during the struggle left behind her shoes and the purse:

> [PROSECUTOR]: When Ms. Solis ran away from the store, did she leave anything behind?
>
> [SANCHEZ]: Yes.
>
> [PROSECUTOR]: What was that?
>
> [SANCHEZ]: She left her flip-flops and her purse behind.
>
> [PROSECUTOR]: What did you do with those items?
>
> [SANCHEZ]: The purse was taken to our service desk in camera view and the shoes I believe were left there. Another associate picked them up. He then explained how the purse was transferred to the police:
>
> [PROSECUTOR]: What happened to those items [the flip flops and purse]?
>
> [SANCHEZ]: They were returned -- well, they were given to the police officer.
>
> [PROSECUTOR]: When were they given to the police officer?
>
> [SANCHEZ]: As soon as they reported to the store.

7

Officer Rodriguez also connected the purse he recovered to Appellant through the surveillance footage. When he got to the store, Officer Rodriguez viewed the Home Depot video-surveillance tape. He noted that Appellant was in possession of a purse that she clung onto during her scuffle with loss control officer Sanchez:

> [PROSECUTOR]: And how do you know that was Ms. Solis' purse?
>
> [OFFOCER RODRIGUEZ]: Based on the videos from the transaction and the altercation with the loss prevention officer, you can see it in her possession. She had a hold of it, even in the altercation when they were struggling she was still in possession of the purse.

From this testimony, the jury could have drawn the fair inference that the purse given to Officer Rodriguez matched what he saw on the surveillance tape.

And if the jury could make the inference that the purse was Appellant's, they could also fairly conclude that she had exclusive possession of it up to the point she dropped it while fleeing. When contraband is found on an accused's person, or in personal items such a purse, the jury might also infer the accused knowingly possessed the contraband found there. *See Frazier v. State*, 480 S.W.2d 375, 381 (Tex.Crim.App. 1972)(noting that accused exercised possession of a coat when he began to put it on and therefore the jury was warranted in finding that he had actual care, control, or management of the contraband found within the coat.); *Kwant v. State*, 472 S.W.2d 781, 783 (Tex.Crim.App. 1971)(evidence was sufficient to uphold conviction where the contraband was found in a paper bag in defendant's hands); *Salinas v. State*, 479 S.W.2d 913, 914-15 (Tex.Crim.App. 1972)(contraband in cigarette pack handed by defendant to jailor); *Broadus v. State*, No. 03-03-00189-CR, 2004 WL 34879, at *3 (Tex.App.--Austin Jan. 8, 2004, no pet.)(mem. op., not designated for publication)(evidence sufficient to support possession charge for drugs found in purse carried by accused).[2]

---

[2] It would not have been lost on the jury that in the store video, Appellant is seen holding onto to the purse during

8

That leaves only the possibility that some unknown person planted the drugs in Appellant's purse either before she entered the store, or after she dropped it and fled the store. But there is nothing but speculation to support that claim. Loss prevention officer Sanchez testified he never went through the purse. No other employee is identified as having had possession of it, nor any plausible claim that any employee would have had the means or motive to plant this kind of contraband. The State's burden is to prove each element of the offense beyond a reasonable doubt, not to exclude every conceivable alternative to a defendant's guilt. *See Brown v. State*, 911 S.W.2d 744, 748 (Tex.Crim.App. 1995)("[E]ach defendant must still be affirmatively linked with the drugs he allegedly possessed, but this link need no longer be so strong that it excludes every other outstanding reasonable hypothesis except the defendant's guilt."). Thus, the State was not required to disprove the possibility that some unknown person, for some unknown reason, planted contraband in the purse. *See Rios v. State*, 08-12-00089-CR, 2014 WL 2466100, at *10 (Tex.App.--El Paso May 30, 2014, no pet.)(not designated for publication)(upholding possession verdict against claim that someone in bar planted contraband on accused when he was unconscious); *Sears v. State*, No. 08-01-00010-CR, 2002 WL 1732595, at *6 (Tex.App.--El Paso July 25, 2002, no pet.)(not designated for publication)(stating that in conducting a legal sufficiency review, court does not consider the accused's countervailing theory that the drugs belonged to someone else or they were planted in his house).

The next thread of Appellant's argument contends that the State did not link the substance that was tested to the substance found Appellant's purse. Appellant emphasizes that Officer Rodriguez never testified that the drugs which were marked as an exhibit were in fact the same substance that he removed from the purse. But we conclude that other evidence makes that link.

---

most of a five-minute struggle with Sanchez and another Home Depo employee. At times they are rolling round on the floor.

9

Officer Rodriguez described finding "two small clear baggies with crystal meth" inside the purse. He then placed them into another clear bag used for evidence and submitted that bag "into evidence." He described that procedure as weighing the substance, presenting it to a supervisor, and turning it into a depository along with a "voucher." The State admitted the methamphetamine as Exhibit 6 at trial. A form titled "Property and Evidence Voucher" was included with the exhibit. That voucher recites a police case number (#17-180237) and identifies two clear plastic baggies with "crystal rocks" and "crystal meth" as the items "seized." The form also notes: a date of June 29, 2017 (the same date as the possession alleged in the indictment); a time of 21:47 (just over an hour after Officer Rodriguez was summoned to the scene); and the location as the Home Depot, at 12221 Montwood Dr. (the same location as this event). Officer Isaiah Rodriguez signed the form, as did a supervisor. These similarities are sufficient evidence from which a rational jury could have concluded the substance recovered by the police came from a purse possessed by Appellant.

The next link in the chain is the analyst's testing. She completed a laboratory report that specifically referenced the same El Paso Police Department case number of l7-180237 as is reflected on the Exhibit 6 evidence voucher. Her report states she received the samples in person from an officer with the El Paso Police Department Crime Laboratory. Her report states that she received two samples ("white solid material") in zipper-sealed plastic bags, one weighing 0.27 grams and one 0.46 grams. The evidence voucher found with Exhibit 6, also lists two samples ("crystal rocks") in clear plastic baggies, one weighing 0.21 grams and one 0.44 grams.[3] This evidence is sufficient to establish a connection between the items Officer Rodriquez seized from the purse and that tested. In addition to the matching case identification number, the samples were of similar weight, similar appearance, and similarly packaged.

---

[3] The jury could have ascribed the small variations in weight to the specific procedures for accurate weighing which the analyst testified to at trial.

We overrule Issue One and affirm the conviction and sentence for the possession charge.

## THE PUNISHMENT CHARGE

Appellant's second issue claims that trial court erred in formulating the punishment charge as it pertains to the "theft of attempted theft" conviction.

### The Problem

The State indicted Appellant for robbery, which by statute is defined to include "intentionally, knowingly, or recklessly caus[ing] bodily injury to another" in the course of committing theft and with intent to obtain or maintain control of the property. TEX.PENAL CODE ANN. § 29.02. Appellant and the State hotly disputed below whether loss control officer Sanchez suffered any "bodily injury." And without any bodily injury, Appellant argued that the most the State proved was a theft, an attempted theft, or maybe not even that as Appellant never left the store with either cash or merchandise.

In the guilt-innocence charge conference, Appellant asked for the lesser included offense of theft and attempted theft. The final charge included instructions on robbery and verdict forms for the jury to either find Appellant guilty or not guilty of robbery. If the jury found her not guilty of robbery, they were directed to answer the following formulation of the lesser included offense:

> If you find from the evidence beyond a reasonable doubt that on or about the 29th day of June 2017, in El Paso County, Texas, the Defendant, CLAUDIA PATRICIA ROCHA SOLIS did then and there unlawfully appropriate or attempt to appropriate property with intent to deprive the owner of the property by unlawfully taking or attempting to take money in exchange for the return of property not purchased by her from Home Depot of the value of more than $20 but less than $500, then you will find the defendant CLAUDIA PATRJCIA ROCHA SOLIS, guilty of theft or attempted theft (Verdict Form 'C').

As per that verdict form, the jury found Appellant guilty of "theft or attempted theft." Neither Appellant or the State objected to this portion of the jury charge. The charge included a definition of theft, but no instruction defining attempted theft.

11

The problem with the charge became apparent at the punishment phase. Theft of more than $20, but less than $500 is a Class B misdemeanor punishable by a jail term of not more than 180 days and a fine up to $2000. TEX.PENAL CODE ANN. § 31.03(e)(2)(defining as Class B misdemeanor); TEX.PENAL CODE ANN. § 12.22 (punishment range for Class B misdemeanor). Attempted theft of the same amount, however, is a Class C misdemeanor that is punishable only by a fine of up to $500. TEX.PENAL CODE ANN. § 15.01 (conviction for attempted crime is one category less than the offense attempted); TEX.PENAL CODE ANN. § 12.23 (punishment range for Class C misdemeanor).

By the time of the punishment phase, Appellant focused on this difference, and objected to the punishment phase charge which allowed the jury to assess a jail term. Appellant urged that the charge could *only* allow for a fine. The trial court disagreed and submitted a punishment charge allowing the jury to assess up to 180 days in jail and a fine not to exceed $2,000 on the "theft or attempted theft" count. The jury assessed a 180-day jail term and a $250 fine on the "theft or attempted theft" count.[4] On appeal, Appellant asks that we remand the case for "a new punishment trial on the theft or attempted theft charge."

**Standard of Review and Controlling Law**

The trial court shall deliver a "written charge distinctly setting forth the law applicable to the case" to the jury. TEX.CODE CRIM.PROC.ANN. art. 36.14. We review charge error under a two-pronged test. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). First, we must determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005). Second, if error exists, we then must evaluate the harm caused by the error. *Id.*

---

[4] The punishment phase evidence included proof of Appellant's conviction on nine other misdemeanor or state jail felonies. Those included six theft charges between March 2000 and June 2016. She had been placed on probation for two thefts with a date of offense of June 13th and June 23, 2016. She missed her initial meetings with the probation officer, did not complete any of the theft counseling, or community service obligations under that probation.

12

The degree of harm required for reversal depends on whether the error was preserved at trial. *Almanza*, 686 S.W.2d at 171; *Neal v. State*, 256 S.W.3d 264, 278 (Tex.Crim.App. 2008). If the error was preserved, we review for "some harm." *Almanza*, 686 S.W.2d at 171. We must reverse "if the error is calculated to injure the rights of defendant, which means no more than that there must be some harm to the accused from the error." *Id.* [internal quotes omitted]. In other words, error properly preserved will require reversal so long as the error is not harmless. *Id.* This analysis requires a reviewing court to consider (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors present in the record. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex.Crim.App. 2013); *see also Almanza*, 686 S.W.2d at 171 ("[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.").

A defendant who does not object to the charge error can only prevail by demonstrating egregious harm. *Arteaga v. State*, 521 S.W.3d 329, 338 (Tex.Crim.App. 2017). Charge error is egregiously harmful if it affects the very basis of a case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Id., citing Sanchez v. State*, 209 S.W.3d 117, 121 (Tex.Crim.App. 2006).

The origin of the charge problem here was submitting two distinct crimes--that carry different potential penalties--in the disjunctive. The jury was allowed to find Appellant guilty of theft or attempted theft, without saying which charge it found beyond a reasonable doubt. Disjunctive submission of different offenses (as distinct from disjunctive submission of the manner of committing the same offense) is error because it circumvents the requirement for unanimity of the verdict. *Francis v. State*, 36 S.W.3d 121, 125 (Tex.Crim.App. 2000); *see also Martinez v.*

13

*State*, 129 S.W.3d 101, 103 (Tex.Crim.App. 2004)(noting same but also that jury unanimity is not violated when the jury is disjunctively instructed on alternate means or theories of committing the same offense); *Ngo v. State*, 175 S.W.3d 738, 749 (Tex.Crim.App. 2005)(noting same, but also that correct use and placement of word "unanimously" in the charge can obviate problem of disjunctive submission).

And here, for instance, half of the jurors could have believed that there was a completed theft, and half only that the State proved an attempt. Yet this is not the issue raised on appeal, as Appellant does not challenge the guilt-innocence phase charge, or the conviction for "theft or attempted theft." Rather, the appeal is limited to the punishment phase charge, based on the instruction that allowed the jury to consider the punishment range for theft. At trial, Appellant urged that they jury could only consider the punishment range for attempted theft.

## A brief detour--invited error

The State first responds to this quandary by claiming it is a problem of Appellant's own making, and she is estopped to assert it. And in several contexts, court have used an "invited error" doctrine to prevent a party from complaining on appeal about something they asked for at trial. *See Prystash v. State*, 3 S.W.3d 522, 531-32 (Tex.Crim.App. 1999)(overruling defendant's complaint on appeal that trial court omitted an instruction when he urged trial court not to submit the instruction; "the law of invited error estops a party from making an appellate error of an action it induced."). The problem with the State's view, however, is that Appellant's counsel asked for a lesser included charge for theft *and* attempted theft.[5] What Appellant got was one question that

---

[5] After both sided closed, the trial court commented on a "proposed charge" and the following colloquy appears in our record:

> COURT: Did you-all want lessers, did you want something unusual that wouldn't be in the standard charge?
> [DEFENSE COUNSEL]: I'm going to want the lessers, Your Honor, that I've been alluding to.
> COURT: Which lessers?

14

asked about theft *or* attempted theft. Nothing suggests that the language of the form of the charge was submitted by Appellant. Neither the State nor Appellant objected to the punishment charge. The absence of an objection necessarily hampers Appellant's ability to complain about the guilt-innocence charge, but we decline to find it also estops Appellant's efforts to fix the problem in the punishment phase charge.

## Application

Nonetheless, we decline to sustain Appellant's second issue for two reasons. First, the objection below asked the trial court to submit only the punishment range for attempted theft. That specific request assumed the jury could not have found Appellant guilty of theft. But the evidence in fact would have supported a conviction for theft (as distinct from only attempted theft). Appellant's argument below was that she never left the store with either goods or money. Yet neither are required for a complete theft. The Texas Court of Criminal Appeals made that clear in *Hill v. State*, 633 S.W.2d 520 (Tex.Crim.App. 1981). In that case, the court affirmed a theft conviction when the thief, having been spotted by the store proprietor stuffing merchandise into his pants, dropped the merchandise and ran out the door. *Id.* at 521. The court rejected the claim that the facts proved at most an attempted theft. *Id.* Rather it held that "it is not essential that the property be taken off the premises; it is instead only essential that the evidence show an 'exercise of control over the property,' coupled with an 'intent to deprive the owner of the property.'" *Id.*, *quoting* § 31.01(4)(defining "appropriate"). The court reached the same conclusion more recently in *State v. Ford*, where it wrote: "It is well settled that the elements of a taking and asportation are

---

[DEFENSE COUNSEL]: I'm hoping for a theft and an attempted theft. The trial court then stated it was going to 'look at the lesser language.' Both sides then were given an updated copy of the charge to which they made final objections. No party objected to the manner of submission of the lesser included offense(s).

15

satisfied where the evidence shows that the property was taken from the owner and was concealed or put in a convenient place for removal. The fact that the possession was brief or that the person was detected before the goods could be removed from the owner's premises is immaterial." 537 S.W.3d 19, 24-25 (Tex.Crim.App. 2017).

Similarly, the facts here do not preclude that the jury found a completed theft. Appellant took control of the items from the shelf all the way to the return counter, and up to the point the return clerk completed the paper transaction, save and except for handing cash to Appellant. And indeed, the guilt innocence charge only defined the offense of theft: "A person commits theft if she unlawfully appropriates property with intent to deprive the owner of the property." It did not provide any instruction on what constitutes attempted theft. Yet Appellant's objection below, which must define the argument on appeal, is that jury could have only considered attempted theft in assessing punishment.[6]

And finally, we have affirmed the possession count that carried a two-year sentence. The "theft or attempted theft" count added only a 180-day jail term, which was to be served concurrently with the possession charge. The fact of the conviction was not challenged, and no complaint is made about the amount of the fine. In this unique situation, the 180-day jail term is not in and of itself harmful. The longer sentence effectively renders error in the shorter sentence harmless error. *See Harper v. State,* No. 05-03-00442-CR, 2004 WL 1738881, at *2 (Tex.App.--Dallas Aug. 4, 2004, pet. ref'd)(not designated for publication)(while trial court erred in not orally pronouncing sentence in defendant's presence, the two-year sentence at issues was being served concurrently with two thirty-five-year sentences, a life sentence, and a twenty-year sentence and

---

[6] If simply remanded and permitted the trial court to charge the second jury on both punishment ranges, how would that remedy the problem? The new jury would have no clearer view of whether the first jury found Appellant guilty of theft or attempted theft than we do.

therefore did not require remand for new sentencing); *Ribelin v. State,* 1 S.W.3d 882, 885 (Tex.App.--Fort Worth 1999, pet. ref'd)(same, improperly imposed one-year sentence was being served concurrently with an eight-year sentence and did not affect defendant's substantial rights). Stated otherwise, the error Appellant complains of does not affect her substantial right and must be disregarded. TEX.R.APP.P. 44.2(b).

We overrule Issue Two and affirm both judgments of convictions below.

August 21, 2019

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)